XAVIER BECERRA, State Bar No. 118517
Attorney General of California
TAMAR PACHTER, State Bar No. 146083
Supervising Deputy Attorney General
ANNA FERRARI, State Bar No. 261579
Deputy Attorney General
 455 Golden Gate Avenue, Suite 11000
 San Francisco, CA  94102-7004
 Telephone:  (415) 510-3779
 Fax:  (415) 703-5480
 E-mail:  Anna.Ferrari@doj.ca.gov
*Attorneys for Defendants Alex Padilla, in his Official Capacity as California Secretary of State, and Steve Gordon, in his Official Capacity as Director of the California Department of Motor Vehicles*

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **ROXANNE HOGE, an individual; ALI MAZAREI, an individual; CORRIN RANKIN, an individual,**<br><br>                                              Plaintiff,<br><br>v.<br><br>**ALEX PADILLA, in his official capacity as the California Secretary of State; STEVE GORDON, in his official capacity as Director of California Department of Motor Vehicles,**<br><br>                                              Defendant. | 2:19-cv-01985-MCE-AC<br><br>**DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES [FRCP 12(b)(1); 12(b)(6)]**<br><br>Date:           February 6, 2020<br>Time:          2:00 p.m.<br>Dept:           7<br>Judge:         The Honorable Morrison C. England, Jr.<br>Action Filed: Oct. 29, 2019 |

**TABLE OF CONTENTS**

                                            **Page**

NOTICE OF MOTION AND MOTION ............................................................................................ 1

MEMORANDUM OF POINTS AND AUTHORITIES ................................................................... 2

INTRODUCTION .............................................................................................................................. 2

BACKGROUND ................................................................................................................................ 3

      I.      The NVRA ...................................................................................................................... 3

      II.     Plaintiffs' Claims ............................................................................................................ 3

Legal Standard ................................................................................................................................... 5

Argument ........................................................................................................................................... 5

      I.      This Court Lacks Subject Matter Jurisdiction. ............................................................... 5

            A.     Plaintiffs Do Not Have Standing to Bring Claims Under Sections 5(e) and 8(a)(1) Because They Allege No Concrete and Particularized Injury. ............................................................................................ 5

            B.     Plaintiffs Lack Standing to Bring a Section 8(i) Claim Because None Provided Statutory Notice of the Violation. ................................... 7

      II.     Plaintiffs' First and Second Claims for Relief Should Be Dismissed for Lack of a Cognizable Legal Theory. ................................................................................ 9

            A.     Plaintiffs' First Claim Against Secretary Padilla Fails Because Section 8(a)(1) Does Not Set Standards for Determining Registrant Eligibility. ................................................................................................... 9

            B.     Plaintiffs Second Claim Against Director Gordon Fails Because Section 5(e) Also Does Not Set Standards for Registrant Eligibility. ...... 10

            C.     The NVRA Presumptively Precludes States from Requiring Registrants to Produce Documentary Proof of Citizenship...................... 12

CONCLUSION ................................................................................................................................ 13

# TABLE OF AUTHORITIES

**Page**

**CASES**

*Action NC v. Strach*
  216 F. Supp. 3d 597 (M.D.N.C. 2016) .................................................................................. 6

*Am. Civil Rights Union v. Martinez-Rivera*
  166 F. Supp. 3d 779 (W.D. Tex. 2015) .................................................................................. 6

*Arizona v. Inter Tribal Council of Arizona, Inc.*
  570 U.S. 1 (2013) ................................................................................................................. 12

*Bellitto v. Snipes*
  268 F. Supp. 3d 1328 (S.D. Fla. 2017) .................................................................................. 8

*Bellitto v. Snipes*
  935 F.3d 1192 (11th Cir. 2019) ....................................................................................... 8, 10

*Chandler v. State Farm Mut. Auto. Ins. Co.*
  598 F.3d 1115 (9th Cir. 2010) ............................................................................................... 5

*Drake v. Obama*
  664 F.3d 774 (9th Cir. 2011) ................................................................................................. 6

*Federal Election Comm'n v. Akins*
  524 U.S. 11 (1998) ................................................................................................................. 7

*Fish v. Kobach*
  309 F. Supp. 3d 1048 (D. Kan. 2018) ................................................................................. 13

*Fish v. Kobach*
  840 F.3d 710 (10th Cir. 2016) ............................................................................................. 13

*Forjone v. California*
  No. 1:06-CV1002LEK/RFT, 2010 WL 653651 (N.D.N.Y. Feb. 19, 2010) ........................... 6

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*
  528 U.S. 167 (2000) ............................................................................................................... 8

*Hein v. Freedom From Religion Foundation, Inc.*
  551 U.S. 587 (2007) ............................................................................................................... 7

*Hollingsworth v. Perry*
  570 U.S. 693 (2013) ........................................................................................................... 6, 7

**TABLE OF AUTHORITIES**
(continued)

Page

*Isabel v. Reagan*
    394 F. Supp. 3d 966 (D. Ariz. 2019) ................................................................................ 9

*Johnson v. Riverside Healthcare Sys., LP*
    534 F.3d 1116 (9th Cir. 2008) .......................................................................................... 5

*Kalsson v. U.S. Federal Election Comm'n*
    356 F.Supp.2d 371 (S.D.N.Y. 2005) ................................................................................ 6

*Kokkonen v. Guardian Life Ins. Co. of America*
    511 U.S. 375 (1994) ......................................................................................................... 5

*Lance v. Coffman*
    549 U.S. 437 (2007) ......................................................................................................... 7

*Lewis v. Casey*
    518 U.S. 343 (1996) ......................................................................................................... 8

*Lujan v. Defenders of Wildlife*
    504 U.S. 555 (1992) ................................................................................................ 5, 6, 7

*Schlesinger v. Reservists Comm. to Stop the War*
    418 U.S. 208 (1974) ......................................................................................................... 7

*Scott v. Schedler*
    771 F.3d 831 (5th Cir. 2014) ........................................................................................... 8

*Summers v. Earth Island Institute*
    555 U.S. 488 (2009) ......................................................................................................... 5

*Watison v. Carter*
    668 F.3d 1108 (9th Cir. 2012) ......................................................................................... 5

# **TABLE OF AUTHORITIES**
(continued)

**Page**

**STATUTES**

52 U.S.C.
    § 20501 ........................................................................................................................... 3
    § 20501(b)(2) ................................................................................................................. 3
    § 20503(a) ...................................................................................................................... 3
    § 20504 .............................................................................................................. 9, 11, 13
    § 20504(c) ........................................................................................................ 7, 12, 13
    § 20504(c)(2)(B) ....................................................................................................... 3, 13
    § 20504(c)(2)(C) ....................................................................................................... 3, 13
    § 20504(e) ............................................................................................................ *passim*
    § 20504(e)(1) ................................................................................................................ 11
    § 20504(e)(2) ................................................................................................................ 11
    § 20505 ........................................................................................................................... 9
    § 20505(a)(1) ............................................................................................................... 12
    § 20507 ........................................................................................................................... 4
    § 20507(i) ............................................................................................................. *passim*
    § 20507(a) ...................................................................................................................... 4
    § 20507(a)(1) ........................................................................................................ *passim*
    § 20507(a)(1)(A) .......................................................................................................... 10
    § 20507(a)(1)(B) .......................................................................................................... 10
    § 20507(a)(1)(C) .......................................................................................................... 10
    § 20507(a)(1)(D) .......................................................................................................... 10
    § 20510(b) .................................................................................................................. 3, 8

California Electoral Code § 2101(a) ....................................................................................... 3

**CONSTITUTIONAL PROVISIONS**

California Constitution, Article 2, § 2 .................................................................................... 3

**COURT RULES**

Federal Rules of Civil Procedure
    Rule 12(b)(1) ............................................................................................................. 1, 5
    Rule 12(b)(6) ............................................................................................................. 1, 5
    Rule 12(b)(6) ............................................................................................................. 2, 5

**OTHER AUTHORITIES**

Senate Comm. on Rules and Admin., National Voter Registration Act of 1993,
    H.R. Rep. No. 9, 103d Cong., 1st Sess. 8 (1993) ................................................................ 11

Senate Comm. on Rules and Admin., National Voter Registration Act of 1993, S.
    Rep. No. 6, 103d Cong., 1st Sess. 41 (1993) ........................................................................ 8

# NOTICE OF MOTION AND MOTION

TO ALL PARTIES AND TO THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE THAT on February 6, 2020, at 2:00 p.m. in Courtroom 7, 14th Floor, of the United States Courthouse located at 501 I Street, Sacramento, CA, 95814, defendants Alex Padilla, in his official capacity as California Secretary of State, and Steve Gordon, in his official capacity as Director of the California Department of Motor Vehicles, will and hereby do move to dismiss the complaint of plaintiffs Roxane Hoge, Ali Mazarei, and Corrin Rankin for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, and for failure to state a claim on which relief may be granted pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.  This motion is based upon this notice of motion and motion, the accompanying memorandum of points and authorities, all records in this action and matters of which the Court may take judicial notice, and any oral argument heard by the Court.

Dated:  December 16, 2019

Respectfully submitted,

XAVIER BECERRA
Attorney General of California
TAMAR PACHTER
Supervising Deputy Attorney Genera

*/s/ Anna T. Ferrari*

ANNA T. FERRARI
Deputy Attorney General
*Attorneys for Defendant*
*Department of Motor Vehicles*

1

# **MEMORANDUM OF POINTS AND AUTHORITIES**

## **INTRODUCTION**

The complaint should be dismissed for lack of jurisdiction and failure to allege a cognizable claim. Plaintiffs, three individual California voters, allege that California Secretary of State Alex Padilla and California Department of Motor Vehicles (DMV) Director Steve Gordon have violated sections 5(e) and 8(a)(1) of the National Voter Registration Act of 1993 (NVRA) by failing to ascertain the citizenship of voter registration applicants. They complain that this has caused their "legitimate vote[s]" to become "diluted by the illegal votes of non-citizens." Compl. ¶¶ 10–12. Plaintiffs also allege that the state defendants have failed to produce records in violation of section 8(i) of the NVRA.

As a threshold matter, all three claims are barred for want of standing. Plaintiffs allege no injury-in-fact with respect to the first or second claims for violation of sections 8(a)(1) and 5(e). The harm alleged is an interest in the proper application of laws, and the only relief sought would no more directly and tangibly benefit Plaintiffs than the public at large. Such generalized grievances are insufficient to confer Article III standing, which is fatal to these. Further, because Plaintiffs failed to provide statutory notice of the alleged section 8(i) records violation, their third claim also fails on standing grounds. Because this Court lacks subject matter jurisdiction over all three claims, this action must be dismissed.

Even if the Plaintiffs had standing, the first and second claims for violation of sections 8(a)(1) and 5(e) fail for lack of a cognizable claim. *See* Fed. R. Civ. P. 12(b)(6). These are procedural requirements. Section 8(a)(1) identifies four different ways in which a person can register to vote, the date on which each method is deemed effective, and the deadline by which state election officials must register applicants. Section 5(e) imposes deadlines by which the DMV must transmit completed voter registration portions of driver's license applications to state election officials. Plaintiffs do not complain that any of these procedures are not being followed. Instead, they ask this court to read into these procedures substantive requirements not found in the language of the laws, and contrary to existing case law. Accordingly, Plaintiffs' first and second claims fail to state a claim upon which relief may be granted, and should be dismissed.

# BACKGROUND

## I. THE NVRA

The NVRA, 52 U.S.C. § 20501 *et seq.*, enacted "to establish procedures that will increase the number of eligible citizens who register to vote in elections for Federal office," requires states to designate certain agencies, including motor vehicle authorities, to provide an opportunity for people to register to vote. 52 U.S.C. § 20501(b)(2). Under the NVRA, each state must permit prospective voters to register by any of three methods: in person, by mail, or simultaneously with a driver's license application.[1] *Id.*, § 20503(a).

Under state law, only U.S. citizens are eligible to vote. Cal. Const., art. 2, § 2; Cal. Elec. Code § 2101(a). The NVRA prescribes standards for collecting information using the Motor Voter application form, including citizenship information. Among other things, the voter registration portion of the form must include a statement that (1) sets forth each voter eligibility requirement, including citizenship; (2) contains an attestation that the applicant meets each such requirement; and (3) requires the signature of the applicant, under penalty of perjury. 52 U.S.C. § 20504(c)(2)(C). The voter registration portion of the form "may require only the minimum amount of information necessary to (i) prevent duplicate voter registrations; and (ii) enable State election officials to assess the eligibility of the applicant and to administer voter registration and other parts of the election process." *Id.*, § 20504(c)(2)(B).

The NVRA affords a private right of action to parties who are aggrieved by a violation of the NVRA, provided that the aggrieved party first provides written notice of the violation to the chief state election official, along with an opportunity to cure the violation. *Id.*, § 20510(b).

## II. PLAINTIFFS' CLAIMS

Plaintiffs Roxane Hoge, Ali Mazarei, and Corrin Rankin are California residents, U.S. citizens, and registered voters. Compl. ¶¶ 10–12. Plaintiffs filed this action against Secretary Padilla and Director Gordon on October 1, 2019, alleging three violations of the NVRA. First, Plaintiffs claim that Secretary Padilla has failed to ensure that only U.S. citizen applicants are

---

[1] The NVRA is commonly referred to as the "Motor Voter Act," and such simultaneous applications are sometimes referred to as "Motor Voter" applications.

eligible to register to vote, in violation of section 8(a)(1) of the NVRA. *Id.*, ¶¶ 36, 82–87. Second, Plaintiffs allege that Director Gordon has failed to transfer to the Secretary of State completed voter registration application portions of state driver's license applications, in violation of section 5(e) of the NVRA. *Id.*, ¶¶ 88–92. Finally, Plaintiffs claim that both Secretary Padilla and Director Gordon have failed to make available to Plaintiffs records concerning their respective programs and activities conducted for the purpose of ensuring the accuracy and currency of official voter lists, in violation of section 8(i) of the NVRA. *Id.*, ¶¶ 93–97.

Before filing the complaint, Plaintiffs sent a letter dated May 23, 2019, complaining that Secretary Padilla had failed to ensure that all registered voters are citizens, in violation of section 8(a) of the NVRA. *Id.*, ¶¶ 15–16. The letter demanded that Secretary Padilla implement a series of proposed screening and list maintenance practices relating to voter eligibility and requested production of records in ten categories. *Id.*, ¶¶ 17, 78. These demands and requests are broadly concerned with voter registration practices in California and are not limited in terms of subject matter to citizenship as an eligibility factor or voter registration applications received from the DMV. *See, e.g.*, *id.* ¶ 78(b) (recounting Request 2, which seeks "[c]opies of all emails or other communications sent or received by the California Secretary of State Election Division relating to processing of voter registration forms to determine voter eligibility over the last two years").

On August 21, 2019, the Secretary of State's Office responded to the notice violation and produced documents in response to multiple records requests. *Id.*, ¶¶ 18, 79. Plaintiffs do not allege that they contacted Secretary Padilla to complain about the sufficiency of his record production or otherwise provide notice that the production violated section 8(i) of the NVRA, and Secretary Padilla received no such communication. *See generally id.*

Plaintiffs sent a similar letter dated June 3, 2019, complaining of Director Gordon's failure to ensure that all registered voters are citizens, in violation of section 8 of the NVRA. *Id.*, ¶¶ 20–21. The letter demanded that the DMV begin recording information regarding citizenship status obtained in connection with driver's license applications for voter registration purposes and transmitting this information to the Secretary of State's office. *Id.*, ¶ 22. The letter also requested records concerning the DMV's processing of voter registration forms. *Id.*, ¶ 80.

On August 21, 2019, the DMV responded to the notice violation and produced records in response to one of the record requests. *Id.*, ¶¶ 23, 81. Plaintiffs do not allege that they contacted Director Gordon to complain about the sufficiency of this production or otherwise provide notice that the production violated section 8(i) of the NVRA, and the Director received no such communication. *See generally id.*

## LEGAL STANDARD

A lack of standing is properly raised in a motion to dismiss for lack of subject-matter jurisdiction, Fed. R. Civ. P. 12(b)(1). *Chandler v. State Farm Mut. Auto. Ins. Co.*, 598 F.3d 1115, 1122 (9th Cir. 2010). Federal courts are courts of limited jurisdiction, *Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375, 377 (1994), and plaintiffs bear the burden of showing that each claim comes within the jurisdiction of a federal court. *Summers v. Earth Island Institute*, 555 U.S. 488, 493 (2009).

A complaint may also be dismissed for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). "A Rule 12(b)(6) dismissal may be based on either a 'lack of a cognizable legal theory' or 'the absence of sufficient facts alleged under a cognizable legal theory.'" *Johnson v. Riverside Healthcare Sys., LP*, 534 F.3d 1116, 1121–22 (9th Cir. 2008) (citation omitted).

Dismissal without leave to amend is appropriate when the court "determines that the pleading could not possibly be cured by the allegation of other facts." *Watison v. Carter*, 668 F.3d 1108, 1117 (9th Cir. 2012) (internal quotation marks and citation omitted).

## ARGUMENT

**I.     THIS COURT LACKS SUBJECT MATTER JURISDICTION.**

  **A.    Plaintiffs Do Not Have Standing to Bring Claims Under Sections 5(e) and 8(a)(1) Because They Allege No Concrete and Particularized Injury.**

Standing is a jurisdictional requirement, and a party invoking federal jurisdiction has the burden of establishing standing. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992). "First, the plaintiff must have suffered an 'injury in fact'—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) 'actual or imminent, not conjectural or

1   hypothetical.'" *Id.* at 560 (citations omitted).  "Second, there must be a causal connection
2   between the injury and the conduct complained of—the injury has to be 'fairly traceable to the
3   challenged action of the defendant, and not th[e] result [of] the independent action of some third
4   party not before the court.'" *Id.*  "Third, it must be 'likely,' as opposed to merely 'speculative,'
5   that the injury will be redressed by a favorable decision." *Id.* at 561 (citations omitted).  Here,
6   Plaintiffs cannot survive the first step of the standing inquiry.  No matter how liberally this Court
7   construes the complaint, it is devoid of any allegations that Plaintiffs have suffered a "concrete
8   and particularized" injury affecting them in a "personal and individual way." *See Hollingsworth*
9   *v. Perry*, 570 U.S. 693, 704, 705 (2013).

10         Ms. Hoge, Mr. Mazarei, and Ms. Rankin each describe their alleged injuries with identical,
11  conclusory language:  "[C]oncern[] about the lack of performance by the Secretary of State in
12  ensuring that only citizens are registered to vote," and that each plaintiff's "legitimate vote is
13  being diluted by the illegal votes of non-citizens."  Compl. ¶¶ 10, 11, 12.  Such bare allegations
14  are too uncertain and impersonal to support an injury-in-fact for standing purposes.  *See Am. Civil*
15  *Rights Union v. Martinez-Rivera*, 166 F. Supp. 3d 779, 787–89, 803 (W.D. Tex. 2015); *Kalsson*
16  *v. U.S. Federal Election Comm'n*, 356 F.Supp.2d 371 (S.D.N.Y. 2005) (plaintiff did not have
17  standing despite his allegation that his vote was diluted because the NVRA results in more people
18  registering to vote than otherwise would be the case), *aff'd*, 159 Fed. Appx. 326 (2d Cir. 2005);
19  *Forjone v. California*, No. 1:06-CV1002LEK/RFT, 2010 WL 653651, at **2, 4 (N.D.N.Y. Feb.
20  19, 2010), *aff'd*, 425 F. App'x 73 (2d Cir. 2011) (dismissing on standing grounds NVRA claim
21  that failure to prevent non-citizens from voting in elections diluted the votes of individual
22  plaintiffs); *compare with Action NC v. Strach*, 216 F. Supp. 3d 597, 630 (M.D.N.C. 2016)
23  (plaintiffs had standing to allege section 5 violation where challenged conduct disenfranchised
24  plaintiffs in the 2014 General Election).  The injuries alleged are generalized grievances that
25  affect large numbers of Americans without differentiation.  *Drake v. Obama*, 664 F.3d 774, 779
26  (9th Cir. 2011) ("[A] litigant's interest cannot be based on the 'generalized interest of all citizens
27  in constitutional governance.'")  (quoting *Schlesinger v. Reservists Comm. to Stop the War*, 418
28  U.S. 208, 217 (1974)).  A plaintiff "claiming only harm to his and every citizen's interest in

proper application of the Constitution and laws, and seeking relief that no more directly and tangibly benefits him than it does the public at large—does not state an Article III case or controversy." *Lujan*, 504 U.S. at 573–74.

In case after case, the Supreme Court has "repeatedly held that such a 'generalized grievance,' no matter how sincere, is insufficient to confer standing" under Article III. *Hollingsworth*, 570 U.S. at 706. For example, the plaintiffs in *Lance v. Coffman*, 549 U.S. 437 (2007), which challenged a provision of the Colorado Constitution limiting redistricting to once every ten years, lacked standing because "[t]he only injury plaintiffs allege is that the law . . . has not been followed. This injury is precisely the kind of undifferentiated, generalized grievance about the conduct of government that we have refused to countenance in the past." *Lance*, 549 U.S. at 442; *see also Schlesinger*, 418 U.S. at 220–221 (Article III standing may not be predicated on an interest held by all members of the public because such interest is necessarily abstract); *Hein v. Freedom From Religion Foundation, Inc.*, 551 U.S. 587, 598 (2007) (taxpayers lacked standing to challenge President's "faith-based initiatives" where their injury was not distinct from that suffered by other taxpayers). Such generalized grievances are better suited for resolution by the political process than judicial system. *See Federal Election Comm'n v. Akins*, 524 U.S. 11, 23 (1998) (citing, *inter alia*, *Warth v. Seldin*, 422 U.S. 490, 500 (1975); *Schlesinger*, 418 U.S. at 222).

Because Plaintiffs fail to allege concrete and particularized injuries, they lack standing to pursue their section 8(a)(i) and section 5(c) claims in federal court. Instead, these claims must be dismissed.

**B. Plaintiffs Lack Standing to Bring a Section 8(i) Claim Because None Provided Statutory Notice of the Violation.**

Plaintiffs' third claim for relief alleges that Secretary Padilla and Director Gordon violated the NVRA by failing "to make available to Plaintiffs "all records" within the past two years 'concerning the implementation of programs and activities conducted for the

purpose of ensuring the accuracy and currency of official lists of eligible voters.'" Compl. ¶ 94 (quoting 52 U.S.C. § 20507). Plaintiffs lack standing to bring this claim, having never complied with the NVRA's pre-litigation notice requirements.

Section 11(b) of the NVRA authorizes a person who is aggrieved by a violation of the NVRA to bring a civil action only after (1) the person provides written notice of the violation to the chief election official, and (2) the noticed violation is not remedied during a 90-day curative period. 52 U.S.C. § 20510(b). Plaintiffs allege that they sent only one violation notice dated May 23, 2019, to the Secretary of State, and one dated June 3, 2019, to the then-Acting Director of the DMV. Compl. ¶¶ 15, 20. Although these notices requested records pursuant to section 8(i), *id.* ¶¶ 78, 80, neither provided notice of any violation of section 8(i). *Id.*, ¶¶ 15–17, 20–22.

A request for records does not satisfy the notice provisions of section 11(b). Both the terms of section 11(b) and the legislative history of the NVRA indicate that Congress intended to provide election officials an opportunity to correct compliance deficiencies before facing litigation. *See* Senate Comm. on Rules and Admin., National Voter Registration Act of 1993, S. Rep. No. 6, 103d Cong., 1st Sess. 41 (1993). Absent such notice, "[n]o standing is therefore conferred . . . since the 90-day period never runs," and no private right of action could have accrued. *Scott v. Schedler*, 771 F.3d 831, 835 (5th Cir. 2014) (dismissing claims of individual plaintiff on standing grounds where notice of NVRA violations was provided only by organizational plaintiff) (quoting *Ga. State Conference of Nat'l Ass'n for the Advancement of Colored People v. Kemp*, 841 F.Supp.2d 1320, 1335 (N.D. Ga. 2012)); *see also Lewis v. Casey*, 518 U.S. 343, 358 n. 6 (1996) ("[S]tanding is not dispensed in gross."); *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 185 (2000) ("[A] plaintiff must demonstrate standing separately for each form of relief sought.").

Notice of other NVRA compliance violations also does not satisfy the notice provisions of section 11(b). *Bellitto v. Snipes*, 268 F. Supp. 3d 1328, 1335 (S.D. Fla. 2017) (dismissing section 8(i) claim for lack of standing). The *Bellitto* court determined that where, as here, the plaintiffs requested records under section 8(i) in the notice of violation, they could not bootstrap a section 8(i) claim onto a civil complaint for a properly-noticed violation. *Id.* As the court reasoned, "to

allow a purported NVRA notice letter to serve such a dual purpose—that is, make an initial request for records and at the same time notify the records keeper of his or her failure to satisfy that request—simply because it provides sufficient notice of a separate NVRA violation would, in the Court's view, defy logic and frustrate the purpose of the NVRA's notice provision (to provide an opportunity to attempt compliance before litigation)." *Id.*

Accordingly, Plaintiffs' third claim for violation of section 8(i) also must be dismissed for lack of standing.

## II. PLAINTIFFS' FIRST AND SECOND CLAIMS FOR RELIEF SHOULD BE DISMISSED FOR LACK OF A COGNIZABLE LEGAL THEORY.

### A. Plaintiffs' First Claim Against Secretary Padilla Fails Because Section 8(a)(1) Does Not Set Standards for Determining Registrant Eligibility.

Plaintiffs' first claim for relief under section 8(a)(1) of the NVRA, alleging that Secretary Padilla has not "fulfill[ed] the state's obligations under Section 8(a)(1) of the NVRA . . . to ensure that only eligible applicants are registered to vote," Compl. ¶ 83, fails to state a claim. Section 8(a)(1) identifies four different ways in which a person can register to vote, the date on which each method is deemed effective, and the deadline by which state election officials must register applicants. *Isabel v. Reagan*, 394 F. Supp. 3d 966, 975 (D. Ariz. 2019). It provides:

> A) in the case of registration with a motor vehicle application under section 20504 of this title, if the valid voter registration form of the applicant is submitted to the appropriate State motor vehicle authority not later than the lesser of 30 days, or the period provided by State law, before the date of the election;
>
> B) in the case of registration by mail under section 20505 of this title, if the valid voter registration form of the applicant is postmarked not later than the lesser of 30 days, or the period provided by State law, before the date of the election;
>
> C) in the case of registration at a voter registration agency, if the valid voter registration form of the applicant is accepted at the voter registration agency not later than the lesser of 30 days, or the period provided by State law, before the date of the election; and
>
> D) in any other case, if the valid voter registration form of the applicant is received by the appropriate State election official not later than the lesser of 30 days, or the period provided by State law, before the date of the election.

52 U.S.C. § 20507(a)(1)(A)–(D).  Plaintiffs do not allege that Secretary Padilla has violated any of these express statutory requirements of subsection (a)(1).  Rather, in a strained interpretation, Plaintiffs construe subsection (a)(1) to require Secretary Padilla to "ensure citizenship" of voter registration applicants at the time of registration.  Compl. ¶ 83.  By its terms, section 8(a)(1) imposes no such obligation, and no federal court has so construed it.

Plaintiffs ground their interpretation of section 8(a)(1) in its use of the word "eligible."  52 U.S.C. § 20507(a)(1) ("each State shall . . . ensure that any eligible applicant is registered . . . .").  But as the Eleventh Circuit has recognized, the modifier "eligible" serves only to distinguish those applications that must be registered from those that cannot.  *Bellitto v. Snipes*, 935 F.3d 1192, 1201 (11th Cir. 2019) (*Snipes*) (affirming judgment that election official complied with NVRA list maintenance obligations).  The *Snipes* court determined that section 8(a)(1) "affirmatively requires states to register eligible voters.  The use of the word 'eligible' here limits the affirmative obligation.  Of course Congress would not have mandated that the states register <u>any</u> applicant—if an applicant is not eligible to vote, a state would be under no obligation to register the applicant."  *Id.* (emphasis in original).  Finding that section 8(a)(1) imposed no substantive limitations on who is eligible to register to vote in the first place, the *Snipes* court rejected a similar claim seeking to alter the plain meaning of the NVRA's list maintenance obligations.  *Id.* at 1203 ("We cannot rewrite the statute to impose additional obligations on the states when Congress chose not to.").  Here, as in *Snipes*, Plaintiffs' first claim should be dismissed because its interpretation of section 8(a)(1) fails as a matter of law.

### B. Plaintiffs Second Claim Against Director Gordon Fails Because Section 5(e) Also Does Not Set Standards for Registrant Eligibility.

Plaintiffs' second claim for relief alleging that Director Gordon has not transferred complete voter registration application portions of Motor Voter applications in violation of section 5(e) fails for similar reasons.  Plaintiffs contend that these applications are not incomplete because, although "the DMV must review evidence of an individual's citizenship or lawful presence in the United States" in connection with an initial application to obtain a driver's license, Compl. ¶ 44, the DMV does not share this evidence with the Secretary of State in

connection with voter registration applications, *id.* ¶ 46. Because section 5(e) does not require this sharing, the claim should be dismissed for failure to state a claim.

Section 5 of the NVRA—captioned "[s]imultaneous application for voter registration and application for motor vehicle driver's license"—prescribes procedures under which applications for a driver's license may serve as voter registration applications. 52 U.S.C. § 20504. Its subsection (e)—captioned "[t]ransmittal deadline"—establishes two alternative deadlines by which "a completed voter registration portion of an application for a State motor vehicle driver's license accepted at a State motor vehicle authority shall be transmitted to the appropriate State election official." *Id.*, § (e)(1)–(2). By its terms, subsection (e) does not establish any substantive requirements regarding registrant eligibility. Specifically, it does not require state election officials to obtain further proof of an applicant's citizenship, whether from the DMV or any other source.

Plaintiffs do not allege that the DMV's transmissions to the Secretary of State are untimely. As with their section 8(a)(1) claim, Plaintiffs instead attempt to read a substantive eligibility standard requiring documentary proof of citizenship into subsection (e)'s requirement that "completed" voter registration applications be transmitted by the DMV to a state election official by a certain deadline. But the modifier "completed" serves only to identify those applications that must be transmitted—that is, applications that have been completed by a registrant. Because driver's license applicants register to vote at their option, the NVRA obligates the DMV to forward only those voter registrations that the applicant has elected to complete. *See* Senate Comm. on Rules and Admin., National Voter Registration Act of 1993, H.R. Rep. No. 9, 103d Cong., 1st Sess. 8 (1993) ("It is the intent of the Committee that the application procedure should require the affirmative act of an applicant but only after the applicant has received a complete application," and the application form should explain that "the failure to complete and sign the voter registration application portion of that form is a declination to register.") It merely excludes applications left empty from the applications to be transmitted. No court has interpreted the term "completed" as used in subsection (e) to require particular content as part of, or in support of, the

Motor Voter application form. Because subsection (e) does not concern eligibility standards for DMV voter registrants, Plaintiffs fail to state a violation of section 5(e).

### C. The NVRA Presumptively Precludes States from Requiring Registrants to Produce Documentary Proof of Citizenship.

Plaintiffs embellish their section 8(a)(1) claim with allegations that, in order to comply with the NVRA, Secretary Padilla must "check[] state administrative records for citizenship information relevant to the determination of eligibility for placement on the voter rolls." Compl. ¶ 39. Not only does section 8(a)(1) not require this, as explained above, it is also contrary to other NVRA provisions which presumptively prohibit states from requiring documentary proof of citizenship as a condition of registration. As the complaint concedes, "states cannot mandate that voters produce proof of citizenship when they register to vote." Compl. ¶ 35 (citing *Arizona v. Inter Tribal Council of Arizona, Inc.*, 570 U.S. 1, 15 (2013).

In *Inter Tribal Council*, the Supreme Court invalidated an Arizona statute requiring documentary proof of citizenship as a condition to voter registration as preempted by an NVRA provision that requires states to "accept and use" a uniform federal form for voter registration by mail. 52 U.S.C. § 20505(a)(1). Because the federal form requires no proof of citizenship beyond an averment, under penalty of perjury, that the applicant is a citizen, the Supreme Court determined that "a state-imposed requirement of evidence of citizenship not required by the Federal Form is 'inconsistent with' the NVRA's mandate that states 'accept and use' the Federal Form. *Inter Tribal Council of Arizona, Inc.*, 570 U.S. at 15. Plaintiffs' allegations that additional proof beyond the averment is required, *e.g.*, Compl. ¶ 36, is inconsistent with this precedent.

Plaintiffs' broad allegations that the DMV "is not transmitting citizenship information, as required by the NVRA," Compl. ¶ 57, are similarly unavailing. As explained above, section 5(e) does not require this. But even as stray allegations, these lack merit because they contradict the terms of section 5(c), which governs the content of a voter registration portion of a Motor Voter application. Section 5(c) allows states to "require only the minimum amount of information necessary to—(i) prevent duplicate voter registrations; and (ii) enable State election officials to assess the eligibility of the applicant and to administer voter registration and other parts of the

election process." 52 U.S.C. § 20504(c)(2)(B).  This minimum-information principle "establishes a ceiling on what information the states can require." *Fish v. Kobach*, 840 F.3d 710, 733 (10th Cir. 2016).

With respect to citizenship, section 5(c) requires that the voter registration application portion "shall include a statement that . . . (i) states each eligibility requirement (including citizenship); (ii) contains an attestation that the applicant meets each such requirement; and (iii) requires the signature of the applicant, under penalty of perjury." 52 U.S.C. § 20504(c)(2)(C); *Fish*, 840 F.3d at 736 (Section 5(c)(2)(C) "commands states to list qualifications and also to require applicants to attest that they meet them and to sign the attestation under penalty of perjury."). Interpreting subsections (c)(2)(B) and (c)(2)(C) together, the Tenth Circuit in *Fish* concluded that the attestation requirement of subsection (c)(2)(C) constitutes "the presumptive minimum amount of information necessary for a state to carry out its eligibility-assessment and registration duties." *Fish*, 840 F.3d at 737.  On these grounds, the court in *Fish* struck down a state statute requiring documentary proof of citizenship for voter registration as preempted by section 5, among other reasons.[2] Thus, to the extent Plaintiffs rely on section 5(c) to support their second claim for relief, these allegations are contrary to law.

## CONCLUSION

For the foregoing reasons, Secretary Padilla and Director Gordon respectfully request that the Court dismiss Plaintiffs' complaint without leave to amend.

---

[2] Unfortunately, before *Fish* invalidated the statute requiring documentary proof of citizenship, the statute had a significant negative impact upon eligible voters. Following a trial on the merits, the district court found that the statute had led the registration applications of tens of thousands of likely-eligible voters to be suspended or canceled, while discouraging incalculable numbers of eligible voters who lacked access to documentary proof of citizenship. *Fish v. Kobach*, 309 F. Supp. 3d 1048, 1109–13 (D. Kan. 2018).

| | |
|---|---|
| Dated: December 16, 2019 | Respectfully submitted,<br><br>XAVIER BECERRA<br>Attorney General of California<br>TAMAR PACHTER<br>Supervising Deputy Attorney General<br><br>*/s/ Anna T. Ferrari*<br><br>ANNA T. FERRARI<br>Deputy Attorney General<br>*Attorneys for Defendants Alex Padilla, in his Official Capacity as California Secretary of State, and Steve Gordon, in his Official Capacity as Director of the California Department of Motor Vehicles* |

SA2019105307
14302318