1   STUART NAIFEH (SBN 233295)          CHAD W. DUNN
    snaifeh@demos.org                    chad@brazilanddunn.com
2   DEMOS                                Director, UCLA Voting Rights Project
    80 Broad Street, 4th Floor           Brazil & Dunn LLP
3   New York, NY 10004                   3303 Northland Drive, Suite 205
    Telephone: 212.485.6055              Austin, TX 78731
4   Facsimile: 212.633.2015              Telephone: 512.717.9822
                                         Facsimile: 512.515.9355
5

6   *Attorneys for Intervenor-Defendants*   *Attorneys for Intervenor-Defendants Sophie*
    *League of Women Voters of California,*  *Kosmacher, Anadela Navarrete Gomez, and*
    *California Common Cause, Unidos US,*    *Kelly Lippman*
7   *and Mi Familia Vota Education Fund*

8   *[Additional counsel listed on signature page]*

9                    UNITED STATES DISTRICT COURT
10                   EASTERN DISTRICT OF CALIFORNIA

11

12  ROXANNE HOGE, an individual; ALI          Case No.      2:19-cv-01985-MCE-AC
    MAZAREI, an individual; CORRIN
13  RANKIN, an individual,                    **MEMORANDUM OF POINTS AND**
                                              **AUTHORITIES IN SUPPORT OF**
14                    Plaintiffs,             **INTERVENOR-DEFENDANTS'**
                                              **MOTION TO INTERVENE**
15         v.
                                              Hearing Date: February 6, 2020
16  ALEX PADILLA, in his official             Time: 2:00 p.m.
    capacity as the California Secretary of   Dept.: Courtroom 7, 14th floor
17  State; STEVE GORDON, in his official      Judge: Hon. Morrison C. England, Jr.
    capacity as Director of California
18  Department of Motor Vehicles,

19                    Defendants,

20  LEAGUE OF WOMEN VOTERS OF
21  CALIFORNIA; CALIFORNIA COMMON
    CAUSE; UNIDOSUS; MI FAMILIA VOTA
22  EDUCATION FUND; SOPHIE
    KOSMACHER, an individual; ANADELA
23  NAVARRETE GOMEZ, an individual; and
24  KELLY LIPPMAN, an individual,

25                    Intervenor-Defendants.

26

27

28

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................................... ii

INTRODUCTION ....................................................................................................... 1

BACKGROUND ......................................................................................................... 1

    A.    Statutory Background.......................................................................... 1

        1.    The National Voter Registration Act of 1993 (NVRA) ............................... 1

        2.    California's Driver's License Application Process..................................... 2

        3.    California New Motor Voter ................................................................ 3

    B.    Proposed Intervenors.......................................................................... 3

    C.    Movants' Prior Litigation Against Defendants Over NVRA Compliance .................... 6

ARGUMENT .............................................................................................................. 7

    I.    Movants Are Entitled to Intervene as of Right to Protect their Organizational Interests and Ensure Their Members and Constituents Do Not Face Obtrusive and Illegal Voter Registration Barriers................................................................................................................... 7

    A.    The Motion to Intervene Is Timely. ............................................................ 7

    B.    Movants Have Protectable Interests that Are Implicated by the Claims in this Case...... 8

    C.    The Present Litigation Threatens to Impair Each of Movants' Protectable Interests. ... 10

        1.    The Litigation Threatens Movants' Settlement Agreement........................ 10

        2.    The Litigation Threatens California's New Motor Voter Law, and Organizational Movants' Missions and Their Constituents' Rights to Vote............................... 11

        3.    The Litigation Threatens the Efficacy of AB60, Movants' Missions to Advocate for Immigrants, and their Communities' Right to Privacy. ................................. 12

        4.    The Litigation Threatens Individual Movants' Right to Vote ................... 13

    D.    Defendants May Not Adequately Represent or Protect Movants' Interests. ................. 14

        1.    Defendants Cannot Adequately Represent Movants' Interests Because Some Movants Were Forced to Sue Defendants to Secure Compliance with the NVRA. ......... 14

        2.    Defendants Are Unlikely to Make All of Movants' Arguments.............................. 15

        3.    Defendants Are Not Capable or Willing to Make All of Movants' Arguments ........ 17

        4.    Movants Offer Necessary Elements that the Parties Would Otherwise Neglect. ...... 17

    II.    In the Alternative, the Court Should Exercise its Broad Discretion to Grant Permissive Intervention ................................................................................................... 18

CONCLUSION ......................................................................................................... 19

1

**TABLE OF AUTHORITIES**

2

**Cases**

3

*Alaska v. Lubchenco*, No. 3:10-cv-00271-TMB, 2011 U.S. Dist. LEXIS 161418 (D. Ak. Mar. 9, 2011) .............................................................................................................................. 16

4

*Arakaki v. Cayetano*, 324 F.3d 1078 (9th Cir. 2003).......................................................... 14, 15

5

*Arizona v. Inter Tribal Council of Arizona, Inc.*, 570 U.S. 1 (2013) ........................................... 18

*Ashmore v. Regents of U. of California*, CV1009050AHMAGRX, 2011 WL 13217749 (C.D. Cal. Mar. 1, 2011)....................................................................................................................... 15

6

7

*Brumfield v. Dodd*, 749 F3d 339 (5th Cir. 2014) ...................................................................... 16

*California Dump Truck Owners Ass'n v. Nichols*, 275 F.R.D. 303 (E.D. Cal. 2011) .............. 8, 15

8

*Californians For Safe & Competitive Dump Truck Transp. v. Mendonca*, 152 F.3d 1184 (9th Cir. 1998) ........................................................................................................................................ 15

9

*Citizens for Balanced Use v. Mont. Wilderness Ass'n*, 647 F.3d 893 (9th Cir. 2011)..... 7, 8, 10, 14

10

*Donnelly v. Glickman*, 159 F.3d 405 (9th Cir. 1998)................................................................. 18

11

*Fish v. Kobach*, 840 F.3d 710 (10th Cir. 2016) ....................................................................... 2, 18

12

*Forest Conservation Council v. U.S. Forest Service*, 66 F.3d 1489 (9th Cir. 1995) .................... 15

*Fresno v. Andrus*, 622 F.2d 436 (9th Cir. 1980) ......................................................................... 8

13

*Idaho Farm Bureau Fed'n v. Babbitt*, 58 F.3d 1392, 1398 (9th Cir. 1995).................................. 14

14

*Idaho v. Freeman*, 625 F.2d 886 (9th Cir. 1980) ......................................................................... 8

15

*Nw. Forest Resource Council v. Glickman*, 82 F.3d 825 (9th Cir. 1996) ...................................... 8

*Prete v. Bradbury*, 438 F.3d 949 (9th Cir. 2006)................................................................... 7, 15

16

*Sagebrush Rebellion, Inc. v. Watt*, 713 F.2d 525 (9th Cir. 1995) .................................................. 8

17

*Smith v. L.A. Unified Sch. Dist.*, 830 F.3d 843 (9th Cir. 2016)..................................................... 8

18

*Smith v. Pangilinan*, 651 F.2d 1320 (9th Cir. 1981) .................................................................... 8

*Sw. Ctr. for Biological Diversity v. Berg,* 68 F.3d 810 (9th Cir. 2001) ..................................... 7, 14

19

*Tex. League of United Latin Am. Citizens v. Whitley*, No. 5:19-cv-00074 (Feb. 27, 2019) .......... 18

20

*Trbovich v. United Mine Workers*, 404 U.S. 528 (1972) .............................................................. 15

21

*United States v. City of Los Angeles*, 288 F.3d 391, 403 (9th Cir. 2002) .................................... 18

*Wilderness Soc'y v. U.S. Forest Serv.*, 630 F.3d 1173 (9th Cir. 2011)................................. 7, 8, 15

22

**Federal Statutes**

23

52 U.S.C. § 20501 ................................................................................................... 1, 10, 11

24

52 U.S.C. § 20503 ................................................................................................................ 1

25

52 U.S.C. § 20504 ............................................................................................................ 1, 2

52 U.S.C. § 20506 ................................................................................................................ 1

26

52 U.S.C. § 20507 .......................................................................................................... 1, 15

27

52 U.S.C. § 20508 ................................................................................................................ 2

28

**State Statutes**

Cal. Elec. Code § 2263 ........................................................................................................ 3

Cal. Elec. Code § 2265 ........................................................................................................ 3

Cal. Veh. Code § 12800 ....................................................................................................... 2

Cal. Veh. Code § 12800.7 .............................................................................................. 2, 12

Cal. Veh. Code § 12801.5 ........................................................................................ 2, 11, 12

Cal. Veh. Code § 12801.9 .............................................................................................. passim

Cal. Veh. Code § 2188 ...................................................................................................... 13

**Rules**

Fed. R. Civ. P. 24 ......................................................................................................... passim

**Other Authorities**

Cal. Legis. Counsel Digest AB 1461, Voter Registration: California New Motor Voter Program, 2015-2016 Reg. Sess., (2015) ........................................................................... 11

John Teke, *Annual Flow Report: U.S. Naturalizations: 2017*, U.S. Department of Homeland Security (August 2019) ......................................................................................... 12

**INTRODUCTION**

Congress enacted the National Voter Registration Act of 1993 ("NVRA") to reduce unnecessary barriers to the ballot and make voter registration as accessible as possible for eligible citizens. California seeks to promote this laudable objective through its New Motor Voter law, greatly streamlining voter registration through its Department of Motor Vehicles. Plaintiffs' lawsuit presents a direct threat to both laws and their underlying objective. It also targets particular Californians by threatening both the voting rights of naturalized citizens who wish to make use of New Motor Voter and the privacy rights of individuals who seek or possess driver's licenses under the State's AB60 law. As organizations who advocated for these laws or engaged in prior litigation to enforce the NVRA against the very state officials being sued here, and as individuals facing direct threats to their voting rights, proposed Intervenor-Defendants have clear protectable interests at stake and are well positioned to make essential arguments beyond what Defendants are likely, willing, or able to make. This Court, therefore, should grant intervention as of right or, in the alternative, permissive intervention.[1]

**BACKGROUND**

**A.    Statutory Background**

**1.   The National Voter Registration Act of 1993 (NVRA)**

Congress's primary goal in enacting the NVRA, 52 U.S.C. §§ 20501, *et seq.*, was to make it easier for eligible voters to become and remain registered to vote. *Id.* § 20501(b). Thus, Congress required states to permit eligible citizens to register to vote by mail, simultaneously with a driver's license application, and when applying for public assistance. *See id.* §§ 20503-20506. With all three methods of voter registration, Congress forbade states from requiring more than the minimum information necessary to assess an applicant's eligibility, including whether the applicant is a citizen. *Id.*; *see also id.* § 20508. With respect to assessing the applicant's citizenship, the NVRA made an attestation under penalty of perjury the "presumptive minimum amount of information

---

[1] Intervenor-Defendants seek intervention only with respect to Plaintiffs' substantive NVRA claims—that is, Plaintiffs' First and Second Causes of Action, alleged under 52 U.S.C. § 20507(a)(1) and 52 U.S.C. § 20504(e), respectively. They take no position as to Plaintiffs' Third Cause of Action seeking access to documents.

1  necessary for a state to carry out its eligibility-assessment and registration duties." *Fish v. Kobach*,

2  840 F.3d 710, 737 (10th Cir. 2016).

3       With respect to voter registration through the Department of Motor Vehicles ("DMV"), the

4  NVRA provides that "[e]ach State motor vehicle driver's license application (including any renewal

5  application) . . . shall serve as an application for voter registration[,]" 52 U.S.C. § 20504(a)(1), and

6  establishes specific requirements for the voter registration portion of a driver's license application,

7  including that: (a) the application "may require only the minimum amount of information necessary

8  to (i) prevent duplicate voter registrations; and (ii) enable State election officials to assess the

9  eligibility of the applicant …," *id.* § 20504(c)(2)(B); and (b) that the application must "(i) state[]

10  each eligibility requirement (including citizenship), (ii) contain[] an attestation that the applicant

11  meets each such requirement; and (iii) require[] the signature of the applicant, under penalty of

12  perjury," *id.* § 20504(c)(2)(C).

13      **2.  California's Driver's License Application Process**

14       In California, first-time applicants for a driver's license must provide the Department of

15  Motor Vehicles ("DMV") with, *inter alia*, their name, address, and age. In addition, they must

16  submit documents establishing their identity and lawful presence in the United States. Cal. Veh.

17  Code §§ 12800, 12800.7, 12801.5. Individuals renewing an existing license or making other

18  changes need not prove lawful presence again.[2]

19       In 2013, the State of California adopted Assembly Bill 60 ("AB60") , which permits the

20  DMV to issue driver's licenses to California residents who cannot document that their presence in

21  the United States is authorized under federal law. Cal. Veh. Code § 12801.9. Subsequent legislation

22  imposed strict confidentiality obligations on the DMV with respect to information and documents

23  provided by AB60 applicants to prove identity or residency. *Id.* § 12801.9(j), (k). State law also

24  prohibits the use of an AB60 license "as evidence of an individual's citizenship or immigration

25  status for any purpose." *Id.* § 12801.9(l).

26  _____

27  [2] *Compare id.* § 12800.7 (permitting DMV to require proof of identity upon application for an original or renewal license) *with id.* § 12801.5 (requiring proof of lawful presence only upon application for an original license).

28

### 3. California New Motor Voter

California's 2015 New Motor Voter law ("AB1461") transformed the State's NVRA motor-voter process into one that automatically registers eligible voters during interactions with the DMV unless the individual opts out. AB1461 requires driver's license applicants to attest under penalty of perjury whether they are U.S. citizens, Cal. Elec. Code § 2263(b)(1)(K), and permits registration of only those who affirm their citizenship, *id.* § 2265(a). Individuals with AB60 licenses are categorically excluded from this process. Cal. Elec. Code § 2263(d).

### B. Proposed Intervenors

Movant League of Women Voters of California ("League") is a non-profit, non-partisan organization with 68 California chapters whose mission is to encourage informed and active participation in government by all eligible voters. Declaration of Helen Hutchison (Dec. 16, 2019), attached hereto as Ex. A, ¶¶ 7-8, 11 ("Hutchison Decl."). It relies heavily on member-volunteers to perform voter registration outreach at community events and naturalization ceremonies. *Id.* ¶¶ 9, 17. The League devoted substantial time and resources advocating for passage and effective implementation of New Motor Voter, including mobilizing members and advocating with lawmakers, the Secretary of State ("Secretary"), and the DMV as they designed and implemented the program. *Id.* ¶¶ 22-24. The League believes that its membership of more than 8,000 Californians includes persons who may need to update their voter registrations and whose registrations will be automatically updated the next time they interact with the DMV through the New Motor Voter program as currently implemented. *Id.* ¶¶ 10, 29.

Movant California Common Cause ("Common Cause") is a non-profit, non-partisan grassroots advocacy organization with staff across the state that seeks to promote public participation in government and to ensure that public officials and institutions are accountable and responsible to all citizens. Common Cause devoted substantial time and resources advocating for the passage and effective implementation of New Motor Voter, including mobilizing members and advocating with lawmakers and public officials as they designed and implemented the program. Common Cause believes that its membership of approximately 100,000 individuals in California includes individuals, some of whom are naturalized citizens, who are eligible but unregistered or

1    need to update their voter registrations and will be automatically registered through the New Motor

2    Voter program as currently implemented.

3         Movant Mi Familia Vota Education Fund ("MFV") is a non-profit, nonpartisan organization

4    seeking to build Latino political power by expanding the electorate and through year-round voter

5    engagement. Declaration of Samuel Molina (Dec. 15, 2019), attached hereto as Ex. B, ¶ 5 ("Molina

6    Decl."). MFV believes that its constituents and 7,000 California members includes persons, some

7    of whom are naturalized citizens, who are eligible but unregistered or need to update their voter

8    registrations and who will be automatically registered the next time they interact with the DMV

9    through the New Motor Voter program as currently implemented. *Id.* ¶¶ 9, 24. MFV regularly

10   conducts voter registration events throughout California, often with a focus on facilitating

11   registration by newly naturalized citizens. *Id.* ¶¶ 14-16. If the New Motor Voter program is less

12   effective, MFV will be forced to devote more resources to helping these voters register instead of

13   to carrying out its other programs. *Id.* ¶¶ 22-23, 25. MFV, its members, and its constituents

14   advocated for AB60, and some members and constituents have made use of its provisions. *Id.* ¶¶

15   33-35.

16        Movant UnidosUS[3] is a non-profit, nonpartisan organization with 57 California affiliates

17   that works through advocacy and civic engagement to build a stronger America where economic,

18   political, and social advancement is a reality for all Latinos. Declaration of Clarissa Martinez de

19   Castro (Dec. 6, 2019), attached hereto as Ex. C, ¶¶ 4-5 ("Martinez Decl."). UnidosUS devoted time

20   and resources advocating for passage and effective implementation of New Motor Voter. *Id.* ¶¶ 18-

21   19. Ensuring that eligible Californians are able to register through the DMV is an essential

22   component of closing the state's Latino registration gap and helping UnidosUS achieve its mission.

23   *Id.* ¶¶ 16, 20. If the New Motor Voter program is less effective, UnidosUS and its affiliates will be

24   forced to devote more resources to voter registration, instead of other civic participation,

25   naturalization, and capacity-building programs. *Id.* ¶¶ 21-23. UnidosUS and some of its affiliates

26   also work to help eligible immigrants naturalize and then become voters. *Id.* ¶¶ 17, 26. A number

27   _____
     [3] UnidosUS, the League, Common Cause, and MFV shall be referred to collectively as
28   "Organizational Intervenors."

1  of UnidosUS California affiliates were members of the Drive California Coalition that was closely

2  involved with the passage and implementation of AB60, and many of UnidosUS's and its affiliates'

3  constituents and members of its affiliates have made use of its provisions. *Id.* ¶¶ 34-35.

4  Movant Anadela Navarrete Gomez is a California resident and undergraduate student at the

5  University of California, Los Angeles ("UCLA"). Declaration of Anadela Navarrete Gomez (Dec.

6  12, 2019), attached hereto as Ex. D ("Navarrete Gomez Decl."). Ms. Navarrete Gomez was born in

7  Oaxaca, Mexico and moved to San Diego during the first grade. *Id.* ¶ 5. She became a naturalized

8  citizen on June 20, 2018 and is eligible to vote. *Id.* ¶ 6. Her naturalization documents are currently

9  in her family's possession in San Diego County, California. *Id.* ¶ 7. On October 19, 2017, before

10  becoming a naturalized citizen, Ms. Navarrete received a California Identification Card at the

11  DMV. *Id.*¶ 8. Ms. Navarrete Gomez is not registered to vote, but she wants to register and vote in

12  the 2020 Presidential Election. *Id.*¶¶ 9, 13. She is going to interact with the DMV to update her

13  identification in the near future and is planning to register to vote at the DMV by availing herself

14  of California's New Motor Voter Law. *Id.*¶¶ 12, 13.

15  Movant Sophie Kosmacher is a new California resident and law student at UCLA.

16  Declaration of Sophie Kosmacher (Dec. 10, 2019), attached hereto as Ex. E ("Kosmacher Decl."),

17  ¶ 3. She is over the age of 18. Kosmacher Decl. ¶ 1. Ms. Kosmacher previously resided in New

18  York and was registered to vote there before moving to California to attend law school. *Id.* ¶ 4. Ms.

19  Kosmacher was automatically registered to vote through the DMV website when she applied for a

20  California license through the DMV's Electronic Diver License and Identification Card Application

21  administered through the ID.Me program on August 23, 2019, and received email notification of

22  her voter registration on September 30, 2019. *Id.* ¶¶ 7, 9. She plans to stay in California for at least

23  the next two years and to vote there for the first time in the March 3, 2020 California primary

24  election. *Id.* ¶¶ 10-11.

25  Movant Kelly Lippman[4] is a California resident and high school teacher in the Los Angeles

26  Unified School District. Declaration of Kelly Lippman (Dec. 10, 2019), attached hereto as Ex. F

---

27  [4] Ms. Lippman, Ms. Kosmacher, and Ms. Navarrete Gomez, shall be collectively referred to
   herein as "Individual Intervenors".

28

1 ("Lippman Decl."), ¶¶ 3-4. She is a U.S. citizen over the age of 18 and is eligible to vote. *Id.* ¶¶ 1,

2 3. Ms. Lippman teaches history at the Girls Academic Leadership Academy. *Id.* ¶ 4. She has been

3 teaching in the United States for the past five years and plans to stay in Los Angeles for the

4 foreseeable future. *Id.* ¶ 5. Many of Ms. Lippman's students are sixteen or seventeen years old and

5 plan to obtain California driver's licenses and register to vote. *Id.* ¶ 7. Ms. Lippman has made it her

6 mission to encourage her students, regardless of ideology, to be civically active, and she routinely

7 talks with them about registering to vote and voting. *Id.* ¶¶ 8, 9. Ms. Lippman does not actively

8 register her students to vote but she encourages them to use the New Motor Voter law when they

9 obtain their drivers' licenses, and she fears that elimination of, or material changes to, the program

10 will inhibit her students from registering to vote. *Id.* ¶¶ 10, 12.

11 **C.     Movants' Prior Litigation Against Defendants Over NVRA Compliance**

12         To vindicate their organizational interests in promoting civic engagement and their

13 members' interests in the right to vote, Movants Common Cause, the League, and UnidosUS have

14 engaged in substantial prior litigation and negotiation with Defendant Padilla and Defendant

15 Gordon's predecessor at the DMV regarding California's NVRA compliance. In 2015, these

16 organizations notified the DMV and the Secretary that California was violating Section 5 of the

17 NVRA by failing to offer a simultaneous, non-duplicative means of registering to vote during

18 covered DMV transactions. After extensive negotiations, the parties entered into a now-expired

19 Memorandum of Understanding ("MOU") under which the DMV and Secretary agreed to change

20 the state's motor-voter procedures. Hutchison Decl. ¶ 36.

21         Subsequently, the organizations sued the DMV and Secretary over an issue that the MOU

22 did not resolve. *League of Women Voters of California v. Kelly*, No. 3:17-cv-02665-LB (N.D. Cal.

23 2017). That litigation, which focused on whether the forms used by the DMV for renewing a

24 driver's license or identification card by mail complied with Section 5's requirements, resulted in

25 a January 2018 Settlement Agreement. Settlement Agreement, ECF No. 70-1, *Kelly*, No. 3:17-cv-

26 02665-LB (N.D. Cal. Jan. 18, 2018). The Agreement requires the DMV and Secretary to, *inter alia*,

27 establish a voter registration process that is integrated into the renewal application for those who

28 renew their drivers' licenses by mail, ensure timely transmittal of voter registration information

between the DMV and the Secretary, and implement the New Motor Voter law in an NVRA-compliant manner. *Id.* In February 2019, the parties agreed to extend the Agreement through December 2020 to allow the DMV and Secretary additional time to address issues relating to the timely transmittal of voter registration information to the Secretary. *See* Stipulation, ECF No. 74, *Kelly*, No. 3:17-cv-02665-LB (N.D. Cal. Dec. 27, 2018).

## ARGUMENT

**I.    MOVANTS ARE ENTITLED TO INTERVENE AS OF RIGHT TO PROTECT THEIR ORGANIZATIONAL INTERESTS AND ENSURE THEIR MEMBERS AND CONSTITUENTS DO NOT FACE OBTRUSIVE AND ILLEGAL VOTER REGISTRATION BARRIERS.**

Under Federal Rule of Civil Procedure 24(a)(2), a court must permit a party to intervene where, as here: "(1) the intervention application is timely; (2) the applicant has a significant protectable interest relating to the property or transaction that is the subject of the action; (3) the disposition of the action may, as a practical matter, impair or impede the applicant's ability to protect its interest; and (4) the existing parties may not adequately represent the applicant's interest." *Citizens for Balanced Use v. Mont. Wilderness Ass'n*, 647 F.3d 893, 897 (9th Cir. 2011) (quoting *Prete v. Bradbury*, 438 F.3d 949, 954 (9th Cir. 2006)). These "requirements are broadly interpreted in favor of intervention." *Id.*; *see also Sw. Ctr. for Biological Diversity v. Berg*, 268 F.3d 810, 818 (9th Cir. 2001) (courts in the Ninth Circuit "construe Rule 24(a) liberally in favor of potential intervenors"). A liberal intervention policy, guided by "practical and equitable considerations," ensures "efficient resolution of issues and broadened access to the courts." *Wilderness Soc'y v. U.S. Forest Serv.*, 630 F.3d 1173, 1179 (9th Cir. 2011) (en banc). In addition, courts "take all well-pleaded, nonconclusory allegations in the motion to intervene . . . and declarations supporting the motion as true absent sham, frivolity or other objections." *Sw. Ctr. for Biological Diversity*, 268 F.3d at 820.

**A.    The Motion to Intervene Is Timely.**

Ninth Circuit courts look at the totality of the circumstances to assess timeliness, and generally weigh three factors: (1) the stage of the proceedings, (2) the prejudice to other parties, and (3) the reasons for and length of any delay. *See Smith v. L.A. Unified Sch. Dist.*, 830 F.3d 843,

1   854 (9th Cir. 2016). The present motion comes as the first responsive pleading is filed and thus

2   before any substantial litigation in the case. The timing of the intervention, therefore, will cause no

3   prejudice to any party. There has been no delay and Movants' application is timely.

4   **B.      Movants Have Protectable Interests that Are Implicated by the Claims in this Case.**

5          The Ninth Circuit has made clear that Rule 24(a)'s "'interest' test is primarily a practical

6   guide to disposing of lawsuits by involving as many apparently concerned persons as is compatible

7   with efficiency and due process," *Wilderness Soc'y*, 630 F.3d at 1179 (quoting *Cty. of Fresno v.*

8   *Andrus*, 622 F.2d 436, 438 (9th Cir. 1980)). Accordingly, the party seeking intervention need not

9   show that it has "a specific legal or equitable interest" in the litigation. *Id.; Mont. Wilderness Ass'n*,

10  647 F.3d at 897. Rather, an applicant has a right to intervene if it has "a 'protectable interest' in the

11  outcome of the litigation of sufficient magnitude to warrant inclusion in the action." *Smith v.*

12  *Pangilinan*, 651 F.2d 1320, 1324 (9th Cir. 1981); *see also California Dump Truck Owners Ass'n*

13  *v. Nichols*, 275 F.R.D. 303, 306 (E.D. Cal. 2011) ("[T]he requisite interest need not be direct as

14  long as it may be impaired by the outcome of the litigation."). Movants' several significant and

15  direct interests in this litigation more than satisfy Rule 24(a).

16         First, Common Cause, the League, and UnidoUS have an interest in protecting the substance

17  and enforceability of their January 2018 settlement with Defendants secured through prior

18  litigation. *See Kelly*, No. 3:17-cv-026659-LB (N.D. Cal.). As explained below, the relief Plaintiffs

19  seek here directly implicates that settlement.

20         Second, Common Cause and the League were prominent voices supporting the passage of

21  the New Motor Voter law in October 2015, while UnidosUS affiliates actively advocated for

22  passage of AB60, and MFV both supported and worked to raise public awareness of the New Motor

23  Voter Law and AB60. The Ninth Circuit has recognized that public interest groups are entitled to

24  intervene by right to help defend laws they actively advocated. *Sagebrush Rebellion, Inc. v. Watt*,

25  713 F.2d 525, 527 (9th Cir. 1995); s*ee also Nw. Forest Resource Council v. Glickman*, 82 F.3d 825,

26  837 (9th Cir. 1996) (explaining that the Ninth Circuit has "allowed public interest groups to

27  intervene" where they "were directly involved in the enactment of the law"); *Idaho v. Freeman*,

28  625 F.2d 886, 887 (9th Cir. 1980) (holding the National Organization of Woman had "an interest

1   in the continued vitality" of the Equal Rights Amendment).

2          Third, the Organizational Intervenors have a protectable interest in serving their missions

3   of promoting voter registration and participation by all eligible voters, including newly naturalized

4   citizens—missions threatened by Plaintiffs' claims and desired relief. This interest is protected by

5   the very statute at issue here, the NVRA. *See* 52 U.S.C. § 20501(b).

6          Fourth, UnidosUS's affiliates and MFV have members and constituents who obtained

7   drivers' licenses and identification cards pursuant to AB60. UnidosUS and MFV have an interest

8   in ensuring that their members' and constituents' rights to have the documents they provided to

9   DMV as proof of their identity and California residency remain protected as required by California

10   law. *See* Cal. Veh. Code § 12801.9(j), (k) .

11          Fifth, as United States citizens residing in California, Movants Sophie Kosmacher and

12   Anadela Navarrete Gomez and members of the communities the Organizational Intervenors

13   represent have a protectable interest in their fundamental right to vote, and in vindicating that right

14   by accessing an efficient DMV voter registration process without undue burden or obstacles.

15   Organizational Intervenors have protectable interests in ensuring their constituents' access to

16   California's New Motor Voter program, in ensuring that those who are already registered remain

17   on the voter rolls, and in avoiding expending organizational resources to help these individuals

18   register—perhaps for a second time—when they should be registered at DMV.

19          Naturalized citizens, such as Ms. Navarrete Gomez, will disproportionately feel the effects

20   of the documentary proof of citizenship requirement Plaintiffs seek, and they therefore have a

21   unique interest in the subject matter of this litigation. Movants Mi Familia Vota and UnidosUS

22   count naturalized citizens among their members and constituents, and have expended significant

23   resources to help them register to vote. The League has also expended resources registering newly

24   naturalized citizens.

25          Movant Kelly Lippman has an interest in advocating for effective voter registration for her

26   students, protected by the NVRA. *See* 52 U.S.C. § 20501(b). Because of New Motor Voter, she has

27   been effective at increasing registration through the DMV process for her former students. Most of

28   Ms. Lippman's current students have not yet interacted with the DMV but plan to do so in the near

1   future and would therefore likely benefit from California's New Motor Voter process. Ms. Lippman

2   has expended significant time and effort into ensure that her students believe that voting is not only

3   important and can positively impact their communities, but also that their participation will not be

4   impeded by "discriminatory and unfair registration" procedures. *See* 52 U.S.C. § 20501(a)(3) .

5   **C.      The Present Litigation Threatens to Impair Each of Movants' Protectable Interests.**

6           To determine whether an intervenor's protectable interest will be impaired, the Ninth

7   Circuit follows the Federal Rules Advisory Committee's explanation that "[i]f an absentee would

8   be substantially affected in a practical sense by the determination made in an action, he should, as

9   a general rule, be entitled to intervene." *Mont. Wilderness Ass'n*, 647 F.3d at 898 (quoting Fed. R.

10  Civ. P. 24 advisory committee's note) (internal quotation marks omitted). In other words, like the

11  interest itself, impairment of the interest is assessed in practical rather than legal terms.

12          Here, Plaintiffs seek to require the DMV to transmit to the Secretary any citizenship

13  information from all applications for a California driver's license, including documentation

14  provided by applicants during DMV transactions. Compl. ¶ 22. They also demand that the Secretary

15  cross reference each new application for voter registration with this DMV citizenship information

16  and other state databases to verify the citizenship of applicants who have already attested to their

17  eligibility; review the registrations of all currently registered voters in order to purge the voter rolls

18  of those who have proven citizenship by their attestation and not through documentary evidence;

19  and review the list of individuals who have received an AB60 license. *Id.* ¶¶ 17, 50. Each of the

20  protectable interests identified above is under direct threat of practical impairment should this relief

21  be granted.

22          **1.  The Litigation Threatens Movants' Settlement Agreement**

23          This action directly threatens Defendant-Intervenors' prior and ongoing efforts to ensure

24  California's compliance with the NVRA, including through their existing Settlement Agreement

25  with the State. An adverse outcome could upend the practices and procedures the Secretary and

26  DMV use to comply with the NVRA, including those detailed in the 2018 Agreement and the 2019

27  Settlement Extension as well as subsequent stipulated orders. A key subject of the Settlement

28  Agreement is the DMV's practices for facilitating voter registration for clients who renew a driver's

1     license by mail. Although eligibility requirements were not at issue in the prior litigation, this case

2     could particularly impact the rights Intervenors sought to vindicate there because individuals who

3     renew by mail are not required to provide updated documentation of their citizenship status. *See*

4     DMV, Renewal-By-Mail Eligibility Information DL 410 FO, *available at*

5     https://www.dmv.ca.gov/portal/dmv/detail/forms/dl/dl410; *see also* Cal. Veh. Code § 12801.5

6     (requiring lawful-presence documentation only for an initial license application). Under the

7     Stipulated Orders, including one entered as recently as December 10, 2019, Defendants are obliged

8     to modify existing systems and develop new systems to ensure those who renew their driver's

9     license by mail will have their voter registration applicaitons transmitted to the Secretary in

10     accordance with the timelines specified in the NVRA. These systems will increase protections for

11     Movants' right to vote and are threatened by Plaintiffs' proposed scheme. ECF Nos. 77, 79, 82, 86,

12     88, *Kelly*, No. 3:17-cv-026659LB (N.D. Cal.) (stipulations by which the DMV and Secretary

13     committed to addressing concerns over timely transmittal of voter registration applications to the

14     Secretary).

15           **2. The Litigation Threatens California's New Motor Voter Law, and Organizational Movants' Missions and Their Constituents' Rights to Vote.**

16

17         The present litigation threatens voter registration in California by seeking to read a

18     documentary-proof-of-citizenship requirement into the NVRA and to severely undercut the

19     efficacy of California's New Motor Voter law, which was passed "for the purpose of increasing

20     opportunities for voter registration by any person who is qualified to be a voter" beyond those

21     afforded by existing law. Cal. Legis. Counsel Digest AB 1461, Voter Registration: California New

22     Motor Voter Program, 2015-2016 Reg. Sess., (2015), *available at* https://leginfo.legislature.ca.gov/

23     faces/billNavClient.xhtml?bill_id=201520160AB1461. Restricting New Motor Voter participation

24     to those who provide the DMV with documentary evidence of citizenship would diminish voter

25     registration opportunities as compared to California's pre-New Motor Voter system and undercut

26     the program's objective to automatically place on the voter rolls all eligible Californians who do

27     not opt out. More than 150,000 Californians earn the right to vote by becoming naturalized citizens

28     each year. John Teke, *Annual Flow Report: U.S. Naturalizations: 2017*, U.S. Department of

Homeland Security (August 2019), at 2. Naturalized citizens who obtained their state IDs prior to naturalizing, such as Movant Ms. Navarrete-Gomez, could be excluded from registering to vote. Because California law does not require a naturalized citizen to provide documentation of their new status when they renew their license,[5] the only evidence of citizenship the DMV would be able to provide to the Secretary may be outdated and not accurately reflect the individual's eligibility. DMV clients who lose the ability to establish their eligibility through an attestation will have no practical way to provide additional documents during renewals completed online or by mail. And even in the case of in-person renewals, some clients may find it burdensome or impractical to provide updated citizenship documentation—such as Ms. Navarrete-Gomez whose documentation is hours away from her current residence.

In addition, the cumbersome process Plaintiffs demand may make New Motor Voter impractical or impossible to administer and threaten the State's NVRA compliance. Collecting, storing, and securely transmitting to another state agency documentary proof of citizenship is not part of the DMV's current mandate and would require substantial changes to the agency's existing procedures and infrastructure. Plaintiffs' requested relief would also place additional burdens on the Secretary. California, like most other states, does not require voters to submit documentary proof of citizenship when they register to vote regardless of the method they use. The Secretary thus has no existing procedures for collecting, securing, and processing such documents. Any such procedure would necessitate a much more cumbersome review of voter registration materials than the current longstanding process that depends upon voter attestation.

### 3. The Litigation Threatens the Efficacy of AB60, Movants' Missions to Advocate for Immigrants, and their Communities' Right to Privacy.

Proposed Defendant-Intervenors UnidosUS's and MFV's missions include advocating on behalf of immigrants, including undocumented immigrants. AB60 benefits these communities by enabling them to obtain a license and identification necessary to access basic public services. AB60

---

[5] *See* DL 410 FO; Cal. Veh. Code § 12801.5 (requiring proof of authorized presence only for original applications with no reference to renewals); *id.* §12814 (describing renewal requirements with no reference to documentation); *cf. id.* § 12800.7 (permitting DMV to require proof of identity, in contrast to proof of authorized presence, for renewals as well original applications).

1    also benefits all Californians by ensuring that all drivers meet licensing requirements. Critical to

2    achieving these goals, the state legislature enacted confidentiality protections prohibiting the DMV

3    from disclosing to the public either the information collected about an AB60 applicant or

4    documents used to prove identity or residency. *See* Cal. Veh. Code § 12801.9(j), (k) . Further, the

5    DMV may only disclose identity or residency documents in extremely limited circumstances:

6    pursuant to criminal subpoena, court order, or a law enforcement agency request based on an urgent

7    health or safety need.  *Id.* Finally, state law prohibits the use of an AB60 license "as evidence of an

8    individual's citizenship or immigration status for any purpose." *Id.* § 12801.9(l) .

9         Though AB60 licensees are categorically excluded from—and thus cannot become

10   registered to vote through—New Motor Voter, Plaintiffs nevertheless seek to compel the DMV to

11   provide the entire list of AB60 licensees to the Secretary for use in assessing voter eligibility.

12   Compl. ¶¶ 49-50. This demand could force the State to use the information for purposes explicitly

13   prohibited by state law—making citizenship determinations. Further, although the DMV is subject

14   to strict confidentiality requirements for AB60 applicant information and documents, records in the

15   Secretary's possession that are used for the purposes of ensuring accurate voter rolls may be subject

16   to public disclosure under California and federal law. *See* Cal. Elec. Code § 2188; 52 U.S.C.

17   § 20507(i) . Transmittal to the Secretary of information concerning AB60 licensees could therefore

18   expose this information to public disclosure, violating state law as well as the reasonable

19   expectations of AB60 licensees, and it could open these individuals to harassment or deter them

20   from becoming licensed at all, harming the communities Movants represent and making it more

21   difficult for Movants to persuade undocumented immigrants to obtain driver's licenses.

22        **4.  The Litigation Threatens Individual Movants' Right to Vote**

23        If Plaintiffs' demands to the Secretary are satisfied, Ms. Navarrete Gomez faces the

24   possibility that she would be prevented from registering to vote even though she recently became

25   an eligible voter. Ms. Navarrete Gomez anticipates either updating her California Identification

26   card or receiving her California driver's license in the near future, is eligible to register to vote, and

27   would be registered to vote through her interaction with the DMV under New Motor Voter as it is

28   currently implemented. Likewise, Ms. Kosmacher was registered to vote under New Motor Voter

based on her attestation of eligibility during her interaction with the DMV, and she has never provided documentation proving her citizenship directly to the Secretary. The scheme Plaintiffs seek could result in Ms. Kosmacher being unlawfully purged from the voter rolls, infringing on her fundamental right to vote. Proposed organizational Defendant-Intervenors represent members or constituents in similar situations to these individual Movants.

**D.    Defendants May Not Adequately Represent or Protect Movants' Interests.**

"In determining whether a would-be intervenor's interests will be adequately represented by an existing party, courts consider: (1) whether the interest of a present party is such that it will undoubtedly make all the intervenor's arguments; (2) whether the present party is capable and willing to make such arguments; and (3) whether the would-be intervenor would offer any necessary elements to the proceedings that other parties would neglect." *Sw. Ctr. for Biological Diversity*, 268 F.3d at 822 (citations omitted). "The burden of showing inadequacy of representation is 'minimal' and satisfied if the applicant can demonstrate that representation of its interests 'may be' inadequate." *Mont. Wilderness Ass'n*, 647 F.3d at 898 (citing *Arakaki v. Cayetano*, 324 F.3d 1078, 1086 (9th Cir. 2003)).

**1.    Defendants Cannot Adequately Represent Movants' Interests Because Some Movants Were Forced to Sue Defendants to Secure Compliance with the NVRA.**

The Ninth Circuit has held that the prosecution of a prior lawsuit by proposed intervenors that is related to the matter in which intervention is sought can be sufficient to satisfy Rule 24 (a)'s inadequacy-of-representation element. *E.g.*, *Idaho Farm Bureau Fed'n v. Babbitt*, 58 F.3d 1392, 1398 (9th Cir. 1995) (holding that intervenors' interest in defending an agency decision would not be adequately represented by the agency because it "was unlikely to argue on behalf of . . . the very organizations that compelled" its decision "by filing a lawsuit"). Here, three proposed Intervenor-Defendants, Common Cause, the League, and UnidosUS, previously sued Defendants to secure compliance with the same statute at issue now—Section 5 of the NVRA. In opposing that lawsuit, the Defendants offered a view of their NVRA obligations that differed in material ways from Movants' understanding of the law's requirements. This circumstance alone meets Movants' low burden of showing that Defendants' representation of their interests may be "inadequate." *Id.* at

1   1397.

2   **2.  Defendants Are Unlikely to Make All of Movants' Arguments**

3   Organizational Intervenors and their affiliates in sister states have litigated numerous cases

4   arising under the provisions of the NVRA at issue here and bring substantial expertise on the law

5   and its capacity for increasing registration among vulnerable populations. Defendant-Intervenors

6   will draw on this national experience and their history representing populations most likely to be

7   impacted by the relief plaintiffs seek in framing their arguments in this litigation, arguments the

8   Defendants are unlikely to make given their California focus.

9   Relatedly, although courts have sometimes held that state governments are presumed to

10  adequately represent the interests of their citizens, *e.g.*, *Prete v. Bradbury*, 438 F.3d 949, 956 (9th

11  Cir. 2006), both the Supreme Court and the Ninth Circuit have held that representation may be

12  inadequate when, as here, the government must speak to a broader set of interests. *Trbovich v.*

13  *United Mine Workers*, 404 U.S. 528, 538-39 (1972); *Forest Conservation Council v. U.S. Forest*

14  *Service*, 66 F.3d 1489, 1499 (9th Cir. 1995), *overruled on other grounds by Wilderness Soc'y*, 630

15  F.3d at 1180 (collecting cases). The Ninth Circuit has made clear that when proposed intervenors'

16  interests are "potentially more narrow and parochial than the interests of the public at large," there

17  are grounds to show that state agencies' representation of their interests "may [be]

18  inadequate." *Californians For Safe & Competitive Dump Truck Transp. v. Mendonca*, 152 F.3d

19  1184, 1190 (9th Cir. 1998); *see also Ashmore v. Regents of U. of California*, CV10-09050-

20  AHM(AGRx), 2011 WL 13217749, at *3 (C.D. Cal. Mar. 1, 2011) (granting intervention of citizens

21  who "have a personal, direct interest in seeking to have [a] law upheld, and interpreted and enforced

22  in a particular manner" and quoting Moore's Federal Practice for the notion that government

23  representation is frequently inadequate when "one group of citizens sues the government,

24  challenging the validity of laws or regulations, and the citizens who benefit from those laws or

25  regulations wish to intervene and assert their own, particular interests") (internal citations

26  omitted).[6]

---

27  [6] Although the Ninth Circuit required more than a minimal showing in *Arakaki v. Cayatano*, 324
    F.3d 1078 (9th Cir. 2003), this Court had no trouble overcoming this presumption when the

28

Here, the DMV and Secretary are responsible for the overall administration of, respectively, California's motor vehicle and driver licensing operations and voter registration and elections, whereas Movants represent more particular and specific interests.[7] For example, while some Movants are, or represent the interests of, naturalized citizens who could face exclusion from the convenient voter registration offered by New Motor Voter, the DMV is primarily responsible for licensing drivers and ensuring vehicle and traffic safety. Thus, the DMV has an interest in ensuring the overall effectiveness of its programs and may not adequately represent the particular interests of naturalized citizens. Similarly, the Secretary must represent the interests of all California voters and not just those of the Movants.

In addition, Defendants have in the past taken positions contrary to Movants' on their obligations under the NVRA. For example, in their prior litigation against Defendants, Common Cause, the League, and UnidosUS alleged that Defendants had violated their obligation under the NVRA to offer seamless voter registration during renewal-by-mail transactions. The State moved to dismiss, arguing that its procedures complied with the NVRA's requirements. Motion to Dismiss, ECF No. 22, *Kelly*, No. 3:17-cv-02665-LB (N.D. Cal. Jun. 30, 2017). Given that the instant case arises under the same section of the same statue that was at issue in the prior litigation, it is unlikely that Defendants will raise the same arguments concerning the NVRA's requirements that Movants' would make. *See Alaska v. Lubchenco*, No. 3:10-cv-00271-TMB, 2011 U.S. Dist. LEXIS 161418, at *14 (D. Ak. Mar. 9, 2011) (granting intervention where, as here, movants alleged that "Defendants have not always shared their views about the issues in these proceedings").

Furthermore, Organizational Intervenors have an interest in minimizing the resources they expend on voter registration efforts so as to maintain capacity to educate voters about pressing issues and engage in other voting- and election-related activities. While the Secretary undoubtedly wants to increase the number of voters who register and participate in California's elections, he

interests at stake were not "identical." *Cal. Dump Truck Owners Ass'n v. Nichols*, 275 F.R.D. 303, 308 (E.D. Ca. 2011).

[7] *Brumfield v. Dodd*, 749 F.3d 339, 345 (5th Cir. 2014) (reversing the denial of a motion to intervene because although both the State and intervenors supported the same program, the State had more extensive interests that "may not align precisely" with intervenors').

1    may be less concerned about whose resources are used in achieving that goal.

2          Likewise, the DMV's primary interest in the continued viability of AB60 is ensuring that

3    all those who drive in the state are licensed. And while DMV clearly has an interest meeting its

4    legal obligation to ensure the privacy of AB60 license holders, that interest cannot be equated to

5    the interest of those whose privacy and well-being is actually at stake should DMV be forced to

6    disclose their personal information. In contrast, UnidosUS and MFV work in and represent

7    communities that include undocumented immigrants and their families, and will bring to this

8    litigation their interest in safety behind the wheel as well as in their personal privacy and freedom

9    from harassment and excessive law enforcement.

10          **3.  Defendants Are Not Capable or Willing to Make All of Movants' Arguments**

11          The adverse positions in prior related litigation described above, while sufficient to

12    demonstrate inadequacy on its own, also speaks directly to the notion that Defendants are not

13    capable or willing to make all of Movant's arguments.

14          **4.  Movants Offer Necessary Elements that the Parties Would Otherwise Neglect.**

15          Proposed Defendant-Intervenors offer two types of distinct and necessary elements to this

16    case. First, they bring distinct and particularized interests, especially those of naturalized citizens

17    who want access to convenient voter registration opportunities and of individuals who seek or

18    possess AB60 licenses. Thus, Movants are well-positioned to make forceful arguments in favor of

19    the voting rights of naturalized citizens and the privacy rights of undocumented immigrants.

20          Second, while the Defendants and organizational intervenors share the broad goal of

21    maximizing democratic participation in California, Movants' interest in this goal is driven by their

22    missions to amplify the voices of particular communities in that process. For example, Mi Familia

23    Vota and UnidosUS advocate for increasing participation specifically among Latino Californians,

24    and the League has long advocated for increasing participation among low-income and other

25    marginalized communities. Movants are thus likely to argue for an expansive view of the State's

26    obligations under the NVRA that goes further than what the State may be willing to concede. This

27    perspective must inform the scope of the State's NVRA obligations and is not represented by the

28    existing parties.

INTERVENOR-DEFENDANTS' MOTION TO INTERVENE
CASE NO. 2:19-cv-01985-MCE-AC

17

Finally, Movants provide a national perspective that Defendants lack in balancing the need to ensure that only eligible citizens register and vote with the obligation to ensure all eligible citizens are given robust opportunities to register without undue burden. *See Tex. League of United Latin Am. Citizens v. Whitley*, No. 5:19-cv-00074 (Feb. 27, 2019); *Fish v. Kobach*, 840 F.3d 710 (10th Cir. 2016); *Arizona v. Inter Tribal Council of Arizona, Inc.*, 570 U.S. 1 (2013).

## II.   IN THE ALTERNATIVE, THE COURT SHOULD EXERCISE ITS BROAD DISCRETION TO GRANT PERMISSIVE INTERVENTION

In the event that the Court finds the requirements for intervention as of right have not been satisfied, the Court should nevertheless grant permissive intervention under Federal Rule of Civil Procedure 24(b). Permissive intervention requires the proposed intervenor's claims or defenses to share a common question of law or fact, a timely motion, and an independent basis for the court's jurisdiction over the proposed intervenor. *Donnelly v. Glickman*, 159 F.3d 405, 412 (9th Cir. 1998); *see also United States v. City of Los Angeles*, 288 F.3d 391, 403 (9th Cir. 2002). Courts have broad discretion to grant or deny permissive intervention. *Donnelly*, 159 F.3d at 412.

Movants satisfy these standards. As discussed *supra*, Movants' motion is timely and their Movants' defenses and the main action share common questions of law and fact—namely, the precise scope of the Defendants' obligations under the National Voter Registration Act. Finally, the Court has jurisdiction over Movants, all of whom are California voters or are organizations that register voters, advocate on behalf of immigrant communities, have members—including naturalized citizens—who are eligible to register to vote, or have members who are non-citizens who do not want their private information to be shared or made available to the public.

Accordingly, Movants request this Court grant them permissive intervention.

1

**CONCLUSION**

2          For the foregoing reasons, proposed Defendant-Intervenors respectfully request that this

3   Court grant their motion to intervene as of right or, in the alternative, for permissive intervention.

4   Dated:  December 16, 2019

5                                                                Respectfully Submitted,

6   /s/ Sonja Diaz (as authorized on 12/16/19)     /s/ Stuart Naifeh
    CHAD W. DUNN                                    STUART C. NAIFEH (SBN 233295)
7   chad@brazilanddunn.com                          snaifeh@demos.org
    Director, UCLA Voting Rights Project            DEMOS
8   BRAZIL & DUNN LLP                               80 Broad Street, 4th Floor
    3303 Northland Drive, Suite 205                 New York, NY 10004
9   Austin, TX 78731                                Telephone: 212.485.6055
    Telephone: 512.717.9822                         Facsimile: 212.633.2015
10  Facsimile: 512.515.9355

11  SONJA DIAZ (SBN 298138)                         SARAH BRANNON* **
    sonjadiaz@luskin.ucla.edu                       sbrannon@aclu.org
12  Founding Director,                              AMERICAN CIVIL LIBERTIES UNION
    Latino Policy & Politics Initiative             FOUNDATION
13  UCLA Luskin School of Public Affairs            915 15th Street, NW
    3250 Public Affairs Building                    Washington, DC 20005
14  Los Angeles, CA 90095-1656                      Telephone: 202.675.2337
    Telephone: 310.794.9498
15                                                  DAVIN ROSBOROUGH*
16  *Attorneys for Intervenor-Defendants*           drosborough@aclu.org
    *Sophie Kosmacher, Anadela Navarrete*           AMERICAN CIVIL LIBERTIES UNION
17  *Gomez, and Kelly Lippman*                      FOUNDATION
                                                    125 Broad Street
18                                                  New York, NY
                                                    Telephone: 212.549.2613
19
20                                                  RAUL L. MACIAS (SBN 293208)
                                                    rmacias@acluca.org
21                                                  VASUDHA TALLA (SBN 316219)
                                                    vtalla@aclunc.org
22                                                  SHILPI AGARWAL (SBN 270749)
                                                    sagarwal@aclunc.org
23                                                  ACLU FOUNDATION
                                                       OF NORTHERN CALIFORNIA, INC.
24                                                  39 Drumm Street
                                                    San Francisco, CA 94111
25                                                  Telephone: 415.621.2493

26

27

28

CHIRAAG BAINS*
cbains@demos.org
ADAM LIOZ*
alioz@demos.org
DEMOS
740 6th Street NW, 2nd Floor
Washington, DC 20001
Telephone: 202.864.2746

*Attorneys for Intervenor-Defendants
League of Women Voters of California,
California Common Cause, Unidos US, and
Mi Familia Vota Education Fund*

*pro hac vice* motion forthcoming
** not admitted in DC; DC practice limited to federal court only