1  STUART NAIFEH (SBN 233295)          CHAD W. DUNN
   snaifeh@demos.org                   chad@brazilanddunn.com
2  DEMOS                               Director, UCLA Voting Rights Project
   80 Broad Street, 4th Floor          Brazil & Dunn LLP
3  New York, NY 10004                  3303 Northland Drive, Suite 205
   Telephone: 212.485.6055             Austin, TX 78731
4  Facsimile: 212.633.2015             Telephone: 512.717.9822
                                       Facsimile: 512.515.9355
5
   *Attorneys for Intervenor-Defendants*   *Attorneys for Intervenor-Defendants Sophie*
6  *League of Women Voters of California,*  *Kosmacher, Anadela Navarrete Gomez, and*
   *California Common Cause, UnidosUS,*      *Kelly Lippman*
7  *and Mi Familia Vota Education Fund*

8  *[Additional counsel listed on signature page]*

9                 UNITED STATES DISTRICT COURT
10                EASTERN DISTRICT OF CALIFORNIA

11

12 ROXANNE HOGE, an individual; ALI        Case No.    2:19-cv-01985-MCE-AC
   MAZAREI, an individual; CORRIN
13 RANKIN, an individual,

14              Plaintiffs,            **INTERVENOR-DEFENDANTS'**
                                       **[PROPOSED] NOTICE OF MOTION**
15        v.                           **AND MOTION TO DISMISS THE**
                                       **COMPLAINT FOR FAILURE TO STATE**
16 ALEX PADILLA, in his official       **A CLAIM (FED. R. CIV. P. 12(b)(6))**
   capacity as the California Secretary of
17 State; STEVE GORDON, in his official    Hearing Date: _____
   capacity as Director of California      Time: 2:00 p.m.
18 Department of Motor Vehicles,           Dept.: Courtroom 7, 14th floor
                                           Judge: Hon. Morrison C. England, Jr.
19              Defendants,

20

21 LEAGUE OF WOMEN VOTERS OF
   CALIFORNIA; CALIFORNIA COMMON
22 CAUSE; UNIDOSUS; MI FAMILIA VOTA
   EDUCATION FUND; SOPHIE
23 KOSMACHER, an individual; ANADELA
   NAVARRETE GOMEZ, an individual; and
24 KELLY LIPPMAN, an individual,

25              Intervenor-Defendants.

26

27

28

TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE that on _____, 2020, at 2:00 p.m. at the Robert T. Matsui United States Courthouse, 501 I Street, Sacramento, California, before the Honorable Morrison C. England, Jr. in Courtroom 7, 14th floor, proposed Intervenor-Defendants League of Women Voters of California, California Common Cause, UnidosUS, Mi Familia Vota Education Fund, Sophie Kosmacher, Anadela Navarrete Gomez, and Kelly Lippman will move and do hereby move the Court for an order dismissing the complaint in this action with prejudice.

This motion is brought pursuant to Federal Rule of Procedure 12(b)(6) and is made on the grounds that Plaintiffs have failed to state a claim upon which relief can be granted.

This motion is supported by this Notice of Motion and Motion, the Memorandum of Points and Authorities, and such oral argument as may be presented by counsel.

Dated:  December 16, 2019

Respectfully Submitted,

/s/ Sonja Diaz (as authorized on 12/16/19)
CHAD W. DUNN
chad@brazilanddunn.com
Director, UCLA Voting Rights Project
BRAZIL & DUNN LLP
3303 Northland Drive, Suite 205
Austin, TX 78731
Telephone: 512.717.9822
Facsimile: 512.515.9355

SONJA DIAZ (SBN 298138)
sonjadiaz@luskin.ucla.edu
Founding Director,
Latino Policy & Politics Initiative
UCLA Luskin School of Public Affairs
3250 Public Affairs Building
Los Angeles, CA 90095-1656
Telephone: 310.794.9498

*Attorneys for Intervenor-Defendants Sophie Kosmacher, Anadela Navarrete Gomez, and Kelly Lippman*

/s/ Stuart Naifeh
STUART C. NAIFEH (SBN 233295)
snaifeh@demos.org
DEMOS
80 Broad Street, 4th Floor
New York, NY 10004
Telephone: 212.485.6055
Facsimile: 212.633.2015

SARAH BRANNON* **
sbrannon@aclu.org
AMERICAN CIVIL LIBERTIES UNION FOUNDATION
915 15th Street, NW
Washington, DC 20005
Telephone: 202.675.2337

DAVIN ROSBOROUGH*
drosborough@aclu.org
AMERICAN CIVIL LIBERTIES UNION FOUNDATION
125 Broad Street
New York, NY
Telephone: 212.549.2613

1

RAUL L. MACIAS (SBN 293208)
rmacias@acluca.org

2

VASUDHA TALLA (SBN 316219)
vtalla@aclunc.org

3

SHILPI AGARWAL (SBN 270749)
sagarwal@aclunc.org

4

ACLU FOUNDATION
   OF NORTHERN CALIFORNIA, INC.

5

39 Drumm Street
San Francisco, CA 94111

6

Telephone: 415.621.2493

7

CHIRAAG BAINS*
cbains@demos.org

8

ADAM LIOZ*

9

alioz@demos.org
DEMOS

10

740 6th Street NW, 2nd Floor
Washington, DC 20001

11

Telephone: 202.864.2746

12

*Attorneys for Intervenor-Defendants*
*League of Women Voters of California,*

13

*California Common Cause, Unidos US, and*
*Mi Familia Vota Education Fund*

14

15

*pro hac vice* motion forthcoming
** not admitted in DC; DC practice limited to federal court only

16

17

18

19

20

21

22

23

24

25

26

27

28

1

STUART NAIFEH (SBN 233295)
snaifeh@demos.org
DEMOS
80 Broad Street, 4th Floor
New York, NY 10004
Telephone: 212.485.6055
Facsimile: 212.633.2015

CHAD W. DUNN
chad@brazilanddunn.com
Director, UCLA Voting Rights Project
Brazil & Dunn LLP
3303 Northland Drive, Suite 205
Austin, TX 78731
Telephone: 512.717.9822
Facsimile: 512.515.9355

*Attorneys for Intervenor-Defendants*
*League of Women Voters of California,*
*California Common Cause, UnidosUS,*
*and Mi Familia Vota Education Fund*

*Attorneys for Intervenor-Defendants Sophie*
*Kosmacher, Anadela Navarrete Gomez, and*
*Kelly Lippman*

*[Additional counsel listed on signature page]*

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROXANNE HOGE, an individual; ALI MAZAREI, an individual; CORRIN RANKIN, an individual, <br><br> Plaintiffs, <br><br> v. <br><br> ALEX PADILLA, in his official capacity as the California Secretary of State; STEVE GORDON, in his official capacity as Director of California Department of Motor Vehicles, <br><br> Defendants, <br><br> LEAGUE OF WOMEN VOTERS OF CALIFORNIA; CALIFORNIA COMMON CAUSE; UNIDOSUS; MI FAMILIA VOTA EDUCATION FUND; SOPHIE KOSMACHER, an individual; ANADELA NAVARRETE GOMEZ, an individual; and KELLY LIPPMAN, an individual, <br><br> Intervenor-Defendants. | Case No.   2:19-cv-01985-MCE-AC <br><br> **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF INTERVENOR-DEFENDANTS' [PROPOSED] MOTION TO DISMISS** <br><br> Hearing Date: _____ <br> Time: 2:00 p.m. <br> Dept.: Courtroom 7, 14th floor <br> Judge: Hon. Morrison C. England, Jr. |

# TABLE OF CONTENTS

TABLE OF AUTHORITIES .............................................................................................. ii

INTRODUCTION ............................................................................................................ 1

FACTUAL BACKGROUND ............................................................................................ 2

   A.   The NVRA and California's Motor-Voter Registration Process ....................................... 2

   B.   Plaintiffs Notify Defendants of Supposed NVRA Violations.............................................. 4

   C.   Plaintiffs File This Action, Claiming That the NVRA Requires Defendants to Transmit and Evaluate Citizenship Documentation to Determine Eligibility........................................... 5

ARGUMENTS ................................................................................................................. 5

   A.   Plaintiffs Fail to State Actionable Claims Under the NVRA.............................................. 6

      1.   The Plain Text of Section 5 of the NVRA Cannot Support Plaintiffs' Claim That DMV Must Collect and Provide Eligibility-related Documents to the Secretary. ............................. 7

      2.   Section 8(a) Does Not Require Review of Documentary Proof of Citizenship............. 10

      3.   Legislative History Does Not Support Plaintiffs' NVRA Interpretation ...................... 12

   B.   Plaintiffs' Interpretation of the NVRA Would Raise Constitutional Questions and Would Conflict with the Voting Rights Act of 1965.......................................................... 13

   C.   Because Allowing Amendment Would be Futile, the Court Should Dismiss These Claims with Prejudice................................................................................................. 15

CONCLUSION ............................................................................................................... 16

1

**TABLE OF AUTHORITIES**

2

**Cases**

3

*Albrecht v. Lund*, 845 F.2d 193 (9th Cir. 1988) ..................................................... 15

*Albrecht v. Lund*, 856 F.2d 111 (9th Cir. 1988) ..................................................... 15

4

*Arizona v. Inter Tribal Council of Arizona, Inc.,* 570 U.S. 1 (2013) ....................... 9

5

*Bellitto v. Snipes*, 935 F.3d 1192 (11th Cir. 2019) ................................................ 11

6

*Carrico v. City & Cty. of San Francisco*, 656 F.3d 1002 (9th Cir. 2011).................. 15

*Clark v. Suarez Martinez*, 543 U.S. 371 (2005) ..................................................... 13

7

*Fish v. Kobach*, 840 F.3d 710 (10th Cir. 2016) ........................................ 1, 7, 9, 10

8

*Fourco Glass Co. v. Transmirra Products Corp.*, 353 U.S. 222 (1957) ................... 12

9

*Godecke ex rel. United States v. Kinetic Concepts, Inc.*, 937 F.3d 1201 (9th Cir. 2019)............... 6

*Gonzalez v. Arizona*, 677 F.3d 383 (9th Cir. 2012) ............................................... 12

10

*Hamdan v. Rumsfeld*, 548 U.S. 557 (2006)............................................................ 12

11

*Knauer v. United States*, 328 U.S. 654 (1946) ....................................................... 13

12

*Levitt v. Yelp! Inc.*, 765 F.3d 1123 (9th Cir. 2014) .................................................. 5

*Mir v. Little Co. of Mary Hosp.*, 844 F.2d 646 (9th Cir. 1988) .................................. 15

13

*Niagara Bottling, LLC v. Rite-Hite Co., LLC*,
    No. EDCV182032PSGSHKX, 2019 WL 1768875, *3 (C.D. Cal. Feb. 11, 2019).................. 15

14

*Schneider v. Rusk*, 377 U.S. 163 (1964) ............................................................... 13

15

*Schreiber Distrib. Co. v. Serv–Well Furniture Co.*, 806 F.2d 1393 (9th Cir. 1986).................... 15

16

*Starr v. Baca*, 652 F.3d 1202 (9th Cir. 2011) .......................................................... 6

17

*Tex. League of United Latin Am. Citizens v. Whitley*, No. 5:19-cv-00074 (Feb. 27, 2019) .......... 14

*United States v. Nader*, 542 F.3d 713 (9th Cir. 2008) ............................................ 10

18

*United States v. Ritchie*, 342 F.3d 903 (9th Cir. 2003) ............................................. 3

19

*United States v. Ron Pair Enterprises, Inc.*, 489 U.S. 235 (1989)............................. 10

*Wesberry v. Sanders* 376 U.S. 1 (1964)................................................................ 13

**Federal Constitution & Statutes**

21

52 U.S.C. § 10301 ............................................................................................. 16, 17

22

52 U.S.C. § 20501 ..................................................................................................... 1

23

52 U.S.C. § 20504 ............................................................................................. passim

52 U.S.C. § 20506 ................................................................................................... 12

24

52 U.S.C. § 20507 ............................................................................................. passim

25

52 U.S.C. § 20508 ............................................................................................... 8, 13

52 U.S.C. § 20509 ................................................................................................... 10

26

52 U.S.C. § 20510 ............................................................................................. 15, 17

27

U.S. Const. amend. XIV, § 1 .................................................................................. 15

28

**Other Authorities**

S. Rep. 103-6 (1993) ................................................................................................................. 12

**State Statutes**

Cal. Elec. Code § 2150(b) ........................................................................................................... 4

**Rules**

Fed. R. Civ. P. 12 ................................................................................................................... 2, 6

**Other Authorities**

California Secretary of State, *California National Voter Registration Act Manual* (Mar. 2019) 3, 4

1

2

### INTRODUCTION

3

Plaintiffs wield the National Voter Registration Act (NVRA) as a weapon to achieve desired

4

policy outcomes that they could not bring about through the democratic process—requiring

5

Californians registering to vote to prove their citizenship with documentary evidence rather than

6

the attestation under penalty of perjury that the NVRA specifically requires. In so doing, they turn

7

the NVRA on its head and ignore the statute's plain text, unanimous case law, and legislative

8

history. Contrary to Plaintiffs' contentions, the NVRA leaves no room for doubt that an attestation

9

of eligibility made under penalty of perjury is sufficient to establish eligibility to register to vote

10

under the NVRA, and California officials are obligated to register any Californians who attest to

11

eligibility and satisfy the other requirements to register to vote. Plaintiffs' attempt to impose

12

additional responsibility on California voters and Defendants cannot stand.

13

Plaintiffs' attempt to shoehorn their desired process into the text of Section 8(a)(1)

14

disregards that this provision simply mandates that the Secretary of State (the Secretary) timely

15

register "eligible applicants," rather than imposing an additional eligibility-review process beyond

16

the specific process the NVRA already requires. Similarly, Section 5(e) of the NVRA requires

17

timely transmittal of each voter registration application from the Department of Motor Vehicles

18

(DMV) to the relevant election official, not the transfer of additional citizenship documents beyond

19

the registration form itself.

20

No court has ever read these provisions to mandate processes like the one proposed by the

21

Plaintiffs. To the contrary, in every case in which states have sought to require citizenship-related

22

documents as part of voter registration, courts have determined that the NVRA prohibited those

23

requirements for the purpose of registering to vote in federal elections. This is because the NVRA's

24

attestation requirement provides "the presumptive minimum amount of information necessary for

25

a state to carry out its eligibility-assessment and registration duties." *Fish v. Kobach*, 840 F.3d 710,

26

737 (10th Cir. 2016).

27

Plaintiffs' arguments thus lack any basis in the NVRA and conflict with all of the relevant

28

caselaw. The Court should dismiss their First and Second Causes of Action with prejudice for

failure to state a claim under Fed. R. Civ. P. 12(b)(6).

## FACTUAL BACKGROUND

### A.  The NVRA and California's Motor-Voter Registration Process

The NVRA sets forth the obligations of the Secretary and the DMV with respect to voter registration and maintenance of the voter rolls. Plaintiffs' claims arise under Section 5 of the NVRA, 52 U.S.C. § 20504, which concerns voter registration during driver's license transactions, and Section 8 of the NVRA, 52 U.S.C. § 20507(a), which contains the Sectary's voter registration and list-maintenance obligations. Compl. ¶¶ 82–92.

In relevant part, Section 5 of the NVRA provides that every "State motor vehicle driver's license application (including any renewal application) submitted to the appropriate State motor vehicle authority under State law shall serve as an application for voter registration with respect to elections for Federal office unless the applicant fails to sign the voter registration application." 52 U.S.C. § 20504(a)(1). The voter registration portion of the driver's license application "may require only the minimum amount of information necessary to--(i) prevent duplicate voter registrations; and (ii) enable State election officials to assess the eligibility of the applicant and to administer voter registration and other parts of the election process." 52 U.S.C. § 20504(c)(2)(B). Further, the application "shall include a statement that--(i) states each eligibility requirement (including citizenship); (ii) contains an attestation that the applicant meets each such requirement; and (iii) requires the signature of the applicant, under penalty of perjury." 52 U.S.C. § 20504(c)(2)(C). After an individual submits a voter registration application through this process to the DMV, Section 5(e) then mandates that the "completed voter registration portion of an application for a State motor vehicle driver's license . . . shall be transmitted to the appropriate State election official" within 10 days of acceptance (or 5 days when the voter registration deadline is approaching). 52 U.S.C. § 20504(e).

Section 8(a)(1) establishes a maximum voter registration deadline, which varies slightly depending on the method by which the voter registers. With respect to voter registration through the DMV, it requires that the State "ensure that any eligible applicant is registered to vote in an election . . . if the valid voter registration form of the applicant is submitted to the appropriate State

1    motor vehicle authority not later than the lesser of 30 days, or the period provided by State law,

2    before the date of the election." 52 U.S.C. § 20507(a)(1)(A).

3        The California National Voter Registration Act Manual sets forth the policies and

4    procedures by which the Secretary, the DMV, and other state agencies comply with the NVRA,

5    and it spells out in detail the implementation of California's New Motor Voter Law. California

6    Secretary of State, *California National Voter Registration Act Manual* (Mar. 2019) , *available at*

7    https://elections.cdn.sos.ca.gov/nvra/nvra-manual/complete.pdf.[1]  According to the Manual, the

8    New Motor Voter program, which "was enacted in 2016 and took effect in 2018," instructs that

9    "eligible DMV customers completing an original or renewal DL/ID application, or a change of

10   DL/ID address transaction will automatically have their voter registration information transmitted

11   to the Secretary." *Id.*, Ch. 2, p. 1. Covered DMV transactions may be conducted electronically

12   either online or at a touch screen terminal in a DMV field office or by paper application. *Id.*, Ch. 2,

13   p. 2. Regardless of how the transaction is conducted, the application asks whether the applicant is

14   a U.S. citizen. If the customer does not answer "Yes," no customer information is transmitted to

15   the Secretary. When the transaction is conducted electronically, customers are not even presented

16   with the voter registration portion of the application unless they answer "Yes" to the citizenship

17   and other eligibility questions. *Id.*, Ch. 2, p. 2-3. Individuals "applying for or renewing a DL/ID

18   under AB60 will not presented with the option to register to vote," and "[r]egardless of the type of

19   form these customers use, or even if they are submitting change of address information, these

20   customers will not have their information transmitted to the Secretary of State." *Id.*, Ch. 2, p. 1 n.1.

21       Once a voter registration application is received via New Motor Voter by the Secretary, the

22   Secretary's staff reviews it, and the application is accepted only if it contains "facts establishing

23   the applicant as an elector, the applicant's name, place of residence, mailing address if different

24   than the place of residence, date of birth, country of birth, driver license (or state identification

25   card) number or last four digits of social security number, and that the applicant is not in state or

26   _____

27   [1] The Manual and the other documents discussed herein are incorporated by reference into
     Plaintiffs' Complaint, *see* Compl. ¶¶ 36–37, and may therefore be considered by the Court in
     resolving this Motion to Dismiss. *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003).

28

federal prison for a felony conviction," and only if the applicant has certified the application "as to its truthfulness and correctness, [by signing the application] under penalty of perjury." *Id.*, Ch. 4, p. 3 (citing Cal. Elec. Code § 2150(b)). If the information provided does not establish the applicant's eligibility or if required information is missing, including the signature or confirmation of the applicant's citizenship, the application is rejected. *Id.*, Ch. 4, p. 4-5.

**B. Plaintiffs Notify Defendants of Supposed NVRA Violations**

On May 23, 2019, Plaintiffs sent a letter to Defendant California Secretary of State Alex Padilla alleging violations of Section 5 and Section 8 of the NVRA. Compl. ¶ 15; Letter to Honorable Alex Padilla (May 23, 2019), attached hereto as Ex. A, at 1. It contended that California was violating the NVRA because the Secretary was "not verifying voter's [sic] citizenship prior to place the voter on the rolls." *Id.* The letter acknowledged, however, that the Secretary does review the application for eligibility, including the presence of the signed attestation of eligibility sworn under penalty of perjury. *Id.* at 2. The letter thus took issue not with a failure to review and verify eligibility, but in the Secretary's doing so based on the application and attestation rather than undertaking a review of the person's DMV file for additional documentary proof of citizenship. *Id.* Plaintiffs also alleged that DMV was violating the NVRA by not "sharing the information in its possession to assist [the Secretary] in determining eligibility." *Id.* at 1.

To address these alleged violations, the letter made four broad demands:

"(1) Start receiving from the DMV documentation regarding an individual's citizenship . . . (2) Begin to review all voter registrations and compare the voter registration with databases maintained by the state of California to ensure that all registrants are eligible to vote before you place them on the California voter rolls; (3) Review all current California registered voters to determine eligibility and send notices to all non-citizens who happen to be on the voter rolls; and (4) Update the California NVRA Manual to specifically lay out the responsibilities of the registrar of voters in verifying eligibility with state and county databases to determine eligibility."

*Id.* at 3–4. These demands not only ask the Secretary to review documentary evidence of citizenship before adding new voters to the rolls, but also to purge the rolls of voters who are already registered but whose citizenship cannot be verified based on existing DMV records.

On May 31, 2019, Plaintiffs sent a similar letter to Defendant Gordon in his capacity as

1    Director of California DMV. Compl. ¶ 23.

2    **C.  Plaintiffs File This Action, Claiming That the NVRA Requires Defendants to Transmit**
     **and Evaluate Citizenship Documentation to Determine Eligibility**

3

4           Plaintiffs' complaint lodges two claims that are challenged in this motion: violation of

5    Section 5(e) of the NVRA, 52 U.S.C. § 20504(e), by the DMV and violation of and 8(a)(1) of the

6    NVRA, 52 U.S.C. § 20507(a)(1), by the Secretary. Compl. ¶¶ 82–92.

7           As to their claim against the Secretary under Section 8(a)(1), Plaintiffs assert that the

8    "NVRA requires Padilla to guarantee that only eligible citizens are registered to vote." *Id.* ¶ 34.

9    Plaintiffs acknowledge that under the NVRA, the Secretary must and does review voter registration

10   applications for the presence of an affirmation of eligibility sworn under penalty of perjury *Id.* ¶

11   36; *see also* 52 U.S.C. § 20504(c)(2). But they contend that by requiring the State to "ensure that

12   any eligible applicant is registered to vote" within set periods of time after the application is

13   submitted, Section 8(a)(1)—without saying so expressly—somehow mandates a comparison of

14   "the voter registration application to the DMV administrative records, the jury service records,

15   and/or other administrative records that contain citizenship data." Compl. ¶ 54.

16          With respect to Defendant Gordon, Plaintiffs argue that the DMV is violating Section 5(e)'s

17   requirement to transmit completed voter registration applications to the Secretary within set periods

18   of time because DMV is not also transmitting citizenship-related documentation from the license-

19   application process along with the other information. *Id.* ¶ 46. Plaintiffs concede that the DMV

20   does, in fact, transmit voter registration information to the Secretary, including the applicant's

21   attestation of citizenship and all other information required by state law. But Plaintiffs contend that

22   these applications are incomplete because they do not include copies of lawful presence documents

23   that the applicant to presented to the DMV when obtaining the original license. *Id.* ¶¶ 46-47.

24                                        **ARGUMENTS**

25   "To survive a motion to dismiss for failure to state a claim …, the [plaintiffs'] factual allegations

26   must . . . suggest that the claim has at least a plausible chance of success." *Levitt v. Yelp! Inc.*, 765

27   F.3d 1123, 1134–35 (9th Cir. 2014) (citation & internal quotation marks omitted). While the factual

28   allegations are "taken as true," they "must plausibly suggest an entitlement to relief, such that it is

1  not unfair to require the opposing party to be subjected to the expense of discovery and continued

2  litigation." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011). Accordingly, "[a] Rule 12(b)(6)

3  dismissal can be based on the lack of a cognizable legal theory." *Godecke ex rel. United States v.*

4  *Kinetic Concepts, Inc.*, 937 F.3d 1201, 1208 (9th Cir. 2019) (internal quotation marks and citations

5  omitted).

6        Plaintiffs' claims fail as a matter of law because they rest on patently erroneous legal

7  theories under the NVRA. The text of the statute, case law interpreting relevant statutory

8  provisions, and legislative history all confirm that the NVRA does not require California to review

9  documentary proof of eligibility or any other external information from state databases before the

10  state may add applicants for voter registration to the rolls, as Plaintiffs contend. Moreover, the

11  interpretation of the NVRA Plaintiffs offer violates established canons of statutory construction

12  because it would raise serious constitutional questions and would create internal conflicts among

13  the NVRA's provisions. Because no set of facts could give rise to the claims Plaintiffs' have pled,

14  the Court should dismiss the complaint with prejudice.

15  **A.  Plaintiffs Fail to State Actionable Claims Under the NVRA.**

16        Plaintiffs attempt to flip the NVRA on its head, arguing that statutory provisions designed

17  to ensure that those who submit valid voter registration forms are timely added to the rolls actually

18  require the state to exclude voters from the rolls unless the Secretary confirms their eligibility with

19  additional documentation or information that is neither requested on the forms themselves nor

20  required by California law. Neither provision of the NVRA relied upon by Plaintiffs imposes any

21  requirements on states regarding the transmission or review of voter eligibility documents or

22  additional citizenship information beyond the required affirmation. Specifically, Plaintiffs argue

23  that Section 5(e), 52 U.S.C. § 20504(e), and Section 8(a)(1) of the NVRA, 52 U.S.C. § 20507(a)(1),

24  require the DMV Director to transmit documentation collected during driver's license processing

25  to the Secretary of State and require the Secretary of State to use those documents to verify the

26  eligibility of voters. Compl. ¶¶ 46, 83. But the text of Section 5(e) and Section 8(a)(1) plainly do

27  not impose such requirements. Both provisions establish the time periods for the transmittal and

28

6

1  processing of voter registration forms and applications, *not* specific elements of what is required to

2  complete the voter registration process.

3      Further undermining Plaintiffs' claims, the more specific provisions of the NVRA that *do*

4  set out the requirements for determining the eligibility of individuals registered through NVRA-

5  dictated channels— specifically, Sections 5(c)(2)(C) and 9(b)(2), 52 U.S.C. § 20504(c)(2)(C); 52

6  U.S.C. § 20508(b)(2)—offer no support for the requirements Plaintiffs seek. Section 5(c)(2)(C) of

7  the NVRA requires that the "voter registration application portion of an application for a State

8  motor vehicle driver's license. . . shall include a statement that—(i) states each eligibility

9  requirement (including citizenship); (ii) contains an attestation that the applicant meets each such

10  requirement; and (iii) requires the signature of the applicant, under penalty of perjury," while

11  Section 9(b)(2) establishes nearly identical requirements for mail voter-registration forms. 52

12  U.S.C. §§ 20504(c)(2), 20508(b)(2). These provisions establish that a sworn attestation is sufficient

13  "for a state to carry out its eligibility-assessment and registration duties." *Fish*, 840 F.3d at 737.

14  None of these provisions require state officials to undertake any additional steps to verify eligibility

15  beyond obtaining the attestation of eligibility provided by prospective voters. These provisions

16  certainly do not require that state officials obtain, review, or transmit any external documentation

17  provided by the potential voter for driver's license or other state purposes in order to verify an

18  applicant's eligibility to vote.

19      California's motor-voter registration process provides individuals with information about

20  the requirements to register to vote, mandates an affirmation of their eligibility, and provides their

21  applications and affirmations to election officials to confirm eligibility. This is all that the NVRA

22  requires. Because Plaintiffs' claims require reading into the NVRA requirements that do not exist,

23  their claims require dismissal.

24      **1. The Plain Text of Section 5 of the NVRA Cannot Support Plaintiffs' Claim That
          DMV Must Collect and Provide Eligibility-related Documents to the Secretary.**

25

26      On its face, Section 5(e) of the NVRA, which is entitled "Transmittal deadline," simply

27  requires that the DMV transmit to the Secretary of State any voter registration application received

28  as part of a driver's license application within a strict time frame. Specifically, it provides that "a

completed voter registration portion of an application for a State motor vehicle driver's license accepted at a State motor vehicle authority shall be transmitted to the appropriate State election official not later than 10 days after the date of acceptance [or] not later than 5 days after the date of acceptance" when the registration deadline for federal election is approaching. 52 U.S.C. § 20504(e). Plaintiffs' argument that this provision mandates the collection, storage, and transmission of documentary proof of citizenship defies logic and basic principles of statutory interpretation and is belied by the NVRA's text.

As a provision concerned with transmittal deadlines, Section 5(e) does not itself define what constitutes a "completed voter registration" application. Other provisions in Section 5 do dictate what information must be included (and what information may not be required) as part of the "voter registration application portion of an application for a State motor vehicle driver's license." 52 U.S.C. § 20504(c)(2). None of these provisions require that a state review documentary proof citizenship as part of assessing a voter registration application.

First, Section 5(c)(2)(C) establishes specifically what information the NVRA requires concerning eligibility: a voter registration application "*shall* include a statement that--(i) states each eligibility requirement (including citizenship); (ii) contains an attestation that the applicant meets each such requirement; and (iii) requires the signature of the applicant, under penalty of perjury." 52 U.S.C. § 20504(c)(2)(C) (emphasis added). This provision sets out the mandatory elements of the voter registration portion of the form. These elements do not include documentary evidence to support the facts attested to under penalty of perjury in the attestation.

Second, Section 5(c)(2)(B)—quoted selectively and misleadingly by the Plaintiffs in support of their claims—in fact imposes *limitations* on what states can require from individuals registering to vote. It mandates that states "may require *only the minimum* amount of information necessary" for election officials to assess eligibility. 52 U.S.C. § 20504(c)(2)(B) (emphasis added). Section 5 of the NVRA, therefore, not only does not require that state election officials obtain and review additional documentation to evaluate citizenship but may well prohibit doing so insofar as collecting such information is not necessary once an individual has attested to citizenship under penalty of perjury.

1      Plaintiffs contend that Section 5(c)'s use of the plainly permissive word "may"—

2  authorizing states to collect information from applicants so long as it is necessary for assessing

3  eligibility—should somehow be read as a mandate that they collect all information that might in

4  any way bear on an applicant's eligibility. They further argue that Section 5(e)'s requirement to

5  transmit "completed" voter registration applications means that DMV must transmit to the

6  Secretary all information in its possession that could have any relevance to voter registration, even

7  if that information is not required by other provisions of the NVRA or by state law. This novel

8  claim finds no support in the text of the statute and directly contravenes the NVRA's stated purpose

9  to increase the number of registered voters.

10      Indeed, even in states where, unlike California, state law requires documentary proof of

11  eligibility to register to vote, courts have uniformly rejected states' attempts to require such

12  citizenship documentation as requirement to register to vote in federal elections.  In *Fish v. Kobach*,

13  840 F.3d 710 (10th Cir. 2016), the Tenth Circuit affirmed a preliminary injunction against Kansas's

14  state law requiring documentary proof of citizenship for voter registration through DMVs. In doing

15  so, it held that Section 5 of the NVRA "is reasonably read to establish the attestation requirement

16  as the presumptive minimum amount of information necessary for a state to carry out its eligibility-

17  assessment and registration duties." *Id.* at 737. Likewise, in *Arizona v. Inter Tribal Council of*

18  *Arizona, Inc* ("*ITCA*"), the Supreme Court held that a state could not reject a voter registration

19  application submitted without documentary proof of citizenship using the voter registration form

20  created by the U.S. Election Assistance Commission pursuant to Section 9 of the NVRA (the

21  "federal form"), even where state law required such proof. 570 U.S. 1, ; *see* 52 U.S.C. § 20509(a).

22  While these courts did not categorically rule that mandating use of citizenship documents is

23  prohibited in all circumstances, their holdings necessarily entail a determination that doing so is

24  not required by the NVRA.

25      Moreover, unlike Kansas and Arizona—and like almost all other states—California has no

26  state law requiring proof of citizenship beyond an attestation. And with no state statutory basis to

27  demand documentary proof of eligibility or review of other external data, it can hardly be argued

28  that collecting such information is "necessary" to assess eligibility—which it would have to be to

1    be permissible under the NVRA. 52 U.S.C. § 20504(c)(2)(B). Indeed, as the *Fish* court held, even

2    a state's own assessment in state law that documentary proof of citizenship was necessary for

3    assessing a prospective voter's eligibility was insufficient on its own to establish its necessity within

4    the meaning of Section 5 of the NVRA.

5          **2.   Section 8(a) Does Not Require Review of Documentary Proof of Citizenship.**

6          Like Section 5(e), Section 8(a)(1) of the NVRA is primarily concerned with timelines for

7    processing voter registrations. It prescribes the maximum deadlines a state may impose for receipt

8    of voter registration forms through NVRA-required methods of voter registration. With respect to

9    registration through the DMV, Section 8(a)(1) provides that any eligible voter who submits a voter

10    registration application to the DMV at least 30 days before the next election must be added to the

11    list of voters eligible to vote in that election. 52 U.S.C. § 20507(a)(1)(A). Contrary Plaintiffs'

12    contentions, this provision does not speak to what a state must do to determine eligibility. While

13    Section 8(a)(1) refers to "eligible" voters, how an applicant must demonstrate eligibility—and

14    therefore what state election officials must review--is set forth in other provisions that prescribe the

15    contents of the voter registration form, including Section 5(c). Nor does Section 8(a)(2)—which

16    Plaintiffs also reference, *see* Compl. ¶ 30, and which requires that states notify voter registration

17    applicants of the result, or "disposition," of their applications—permit importing unstated eligibility

18    criteria or other obligations into Section 8(a)(1). Plaintiffs' argument that these provisions require

19    the Secretary to obtain and review documentary proof of citizenship flies in the face of their plain

20    meaning.

21          Any analysis of the meaning of a statutory provision begins "with the language of the statute

22    itself." *United States v. Ron Pair Enterprises, Inc.*, 489 U.S. 235, 241 (1989). Here, an ordinary

23    reading of the text shows that Section 8(a)(1) uses "eligible" as an adjective that modifies the noun

24    "applicant"—thus, the words "eligible *applicant*" identify who the state must "ensure . . . is

25    registered to vote in an election." As the Ninth Circuit has explained, when Congress places an

26    adjective or preposition phrase next to a noun, this "strongly supports the conclusion that the phrase

27    modifies that word." *United States v. Nader*, 542 F.3d 713, 717–18 (9th Cir. 2008). Reading the

28

1    word "eligible" together with "ensure" to require the Secretary to "ensure" the eligibility of

2    applicants, as Plaintiffs suggest, strips the word "eligible" from its position as an adjective

3    modifying "applicant." In other words, the action Section 8(a)(1) requires of the state is ensuring

4    *registration*, not ensuring the eligibility of applicants.

5            The Eleventh Circuit's recent decision in *Bellitto v. Snipes*, 935 F.3d 1192, 1201 (11th Cir.

6    2019), confirms this interpretation of Section 8(a)(1). In *Bellitto*, the Eleventh Circuit explained

7    that Section 8(a)(1) "affirmatively requires states to register eligible voters." *Id.* at 1201. While the

8    *Bellitto* court agreed with the common-sense proposition that ineligible voters should not be on the

9    voter rolls, it held that an obligation to remove such voters could not be read into Section 8(a)(1).

10   Noting that "use of the word 'eligible' here limits the affirmative obligation," the court held that

11   "there is no authority for the proposition that its reference to 'eligible' voters should be read into a

12   separate, and separately clear, provision" imposing an additional obligation on states. *Id.* Plaintiffs

13   here promote a reading of Section 8(a)(1) analogous to the one rejected by the Eleventh Circuit,

14   and their complaint must therefore be dismissed for the same reasons as those set forth in *Bellitto*.[2]

15           Moreover, the NVRA sections that are relevant to the state's obligation to ensure eligibility

16   make an attestation of eligibility under penalty of perjury sufficient. *See* 52 U.S.C.

17   §§ 20504(c)(2)(C), 20506(a)(6)(A); 20508(b)(2). The NVRA expressly prohibits states from

18   mandating notarization of a voter's signature on a voter registration form, suggesting a

19   congressional judgment that additional assurance of eligibility beyond the attestation itself is not

20   necessary. 52 U.S.C. § 20508(b)(3). Congress's inclusion of the specific, minimum requirements

21   for eligibility further supports the conclusion that Section 8(a)(1) addresses only registration

22   deadlines, not eligibility verification. Congress plainly knew how to set eligibility-process criteria

23   and it did so in those other sections. The absence of such criteria in Section 8(a)(1) speaks to the

24   lack of congressional intent to have that provision set eligibility criteria or processes. *See Fourco*

25

26   [2] Plaintiffs further suggest that Section 8(a)(1) requires the Secretary not only to reject applicants
     who fail to provide citizenship documentation to the DMV, but also to remove individuals lacking
27   such documents who have already been registered to vote through the motor-voter process. *See,*
     *e.g.*, Compl. ¶¶ 17, 54. This contention was even more squarely rejected by the Eleventh Circuit
     in *Bellitto* and should be rejected here. *See Bellitto*, 935 F.3d at 1201.
28

*Glass Co. v. Transmirra Products Corp.*, 353 U.S. 222, 228–29 (1957) ("Specific terms prevail over the general in the same … statute which otherwise might be controlling.") (citation & internal quotation marks omitted).

Given the plain text of the statute and the presence of other, more-specific eligibility processes in other parts of the statute, Plaintiffs cannot state a claim under Section 8(a)(1) of the NVRA.

### 3. Legislative History Does Not Support Plaintiffs' NVRA Interpretation

The legislative history of the NVRA contradicts Plaintiffs' interpretation of Section 5(e) and Section 8(a)(1) as well. The Supreme Court has recognized that "Congress' rejection of the very language that would have achieved the result [a party] urges weighs heavily against [that party's] interpretation." *Hamdan v. Rumsfeld*, 548 U.S. 557, 558 (2006). Here, the issue of how to determine eligibility was raised and debated during the NVRA's legislative process. Opponents of the bill introduced an amendment requiring documentary proof of citizenship—an amendment "both chambers affirmatively rejected." *Gonzalez v. Arizona*, 677 F.3d 383, 442 (9th Cir. 2012) (Kozinski, J., concurring), *aff'd sub nom. Arizona v. Inter Tribal Council of Ariz., Inc.*, 570 U.S. 1 (2013).

Indeed, the Senate Report even explained that a sworn attestation was sufficient to determine eligibility. In addressing "the possibility of the registration of license applicants who are under age or not citizens," the Senate Rules Committee noted that "the bill requires that the application include a statement as to voting eligibility requirements, including age and citizenship, which must be attested to by the applicant upon signing the application." S. REP. 103-6, at 8–9 (1993). The Committee went on to state that in light of the attestation requirement "[t]ogether with the criminal penalties section of the bill, the Committee is confident that this Act provides sufficient safeguards to prevent noncitizens from registering to vote." *Id.* at 9.

Congress's explicit rejection of a documentary proof of eligibility requirement in favor of a simple attestation further undermines the interpretations of Section 5(e) and Section 8(a)(1) put forth by Plaintiffs. Because Plaintiffs' claims are not supported by the language of the NVRA or

1    its legislative history, their claims must be dismissed.

2    **B.  Plaintiffs' Interpretation of the NVRA Would Raise Constitutional Questions and Would Conflict with the Voting Rights Act of 1965.**

3

4    Plaintiffs' argument that the NVRA requires the DMV to share and the Secretary to consider

5    documents and other external information about citizenship as part of the voter registration process

6    would have an obvious, predictable, and disproportionate impact on naturalized citizens in

7    California. Thus, Plaintiffs' proposed construction of the statue would likely conflict with the

8    Fourteenth Amendment, in violation of the canon of constitutional avoidance, which requires courts

9    to avoid an interpretation of a statute that raises serious constitutional questions when the statute is

10   susceptible of a construction that raises no such concerns. *See Clark v. Suarez Martinez*, 543 U.S.

11   371, 380-81 (2005) ("when deciding which of two plausible statutory constructions to adopt, …

12   [i]f one of them would raise a multitude of constitutional problems, the other should prevail—

13   whether or not those constitutional problems" would arise in the case at bar); *see also ITCA,* 570

14   U.S. at 18–19. Plaintiffs' construction of NVRA Sections 5 and 8 would also require California to

15   engage in practices that likely violate the Voting Rights Act of 1965, placing them in conflict with

16   another provision of the NVRA requiring that the statute be interpreted consistent with the Voting

17   Rights Act, *see* 52 U.S.C. § 20510, in violation of principles of statutory construction requiring

18   provisions of a statute to be construed harmoniously. In other words, Plaintiffs seek to thrust upon

19   this Court a flawed interpretation of the NVRA that would put the statute on a collision course with

20   our most fundamental legal and voting rights protections, raising serious constitutional questions

21   and conflicting with the express terms of the NVRA itself.

22   The Fourteenth Amendment's guarantee of "equal protection of the laws," U.S. Const.

23   amend. XIV, § 1, applies to treatment of native-born and naturalized citizens. *Knauer v. United*

24   *States*, 328 U.S. 654, 658 (1946) ("Citizenship obtained through naturalization is not second-class

25   citizenship"); *see also Schneider v. Rusk*, 377 U.S. 163 (1964) (explaining that "the rights of

26   citizenship of the native born and of the naturalized person are of the same dignity and are

27   coextensive"). This command carries special weight when applied to the fundamental right to vote.

28   *See e.g. Wesberry v. Sanders* 376 U.S. 1, 17 (1964) ("No right is more precious in a free country

than that of having a voice in the election of those who make the laws…"). If California were to follow Plaintiffs' proposed scheme, the state would be placing naturalized citizens in a different, and disadvantaged, position relative to native-born citizens with respect to their ability to access the ballot, creating clear equal protection concerns and potentially threatening the state's entire New Motor Voter program.

In California, documentation of lawful presence is not required after an initial driver's license application. *See* Cal. Veh. Code § 12801.5 (requiring proof of authorized presence only for original applications with no reference to renewals); *see also* Compl. ¶ 44 (conceding that evidence of immigration status is only required at the time of an original driver's license application). In other words, individuals renewing a driver's license or reporting a change of address do not have to provide new evidence of lawful presence, even if their citizenship status has changed. Consequently, with respect to a naturalized citizen who obtained a driver's license as a lawfully present non-citizen, the DMV will have only the outdated documentation originally provided, not updated documentation showing that the individual is now a citizen and eligible to vote. These individuals would be excluded from New Motor Voter under the interpretation of the NVRA put forth by Plaintiffs. A district court in Texas recently found a voter registration program that similarly relied on outdated citizenship documentation likely violated the Constitution's Equal Protection Clause because of its predictable effect on non-citizens. *See* Order, ECF No. 61, *Tex. League of United Latin Am. Citizens v. Whitley*, No. 5:19-cv-00074 (Feb. 27, 2019) (enjoining voter purge based outdated citizenship documentation provided to Secretary of State by driver's license agency).

In addition to likely violating the Constitution, the interpretation of the NVRA proffered by Plaintiffs would likely violate the Voting Rights Act of 1965, which prohibits discrimination on the basis of race. *See* 52 U.S.C. § 10301, et seq. Nearly three-quarters of those who become naturalized citizens in California each year are Latino or Asian. Profiles of Naturalized Citizens: 2017 State, U.S. Dep't of Homeland Security (Sept. 27, 2018), *available at* https://www.dhs.gov/profiles-naturalized-citizens-2017-state (showing more than 117,000 of California's 157,364 2017

naturalized citizens came from countries in Latin American or Asia)[3]. The likely disparate impact on naturalized citizens of Plaintiffs' proposed scheme would therefore cause the NVRA to conflict with Section 2 of Voting Rights Act. 52 U.S.C. § 10301. This, in turn, would turn the NVRA further against itself.  Section 11 of the NVRA expressly provides that its provisions shall not be construed to "supersede, restrict, or limit the application of the Voting Rights Act of 1965" or to "authorize[] or require[] conduct that is prohibited by" it.  52 U.S.C § 20510(d).

In sum, Plaintiffs' strained interpretation of the NVRA would violate core principles of statutory construction by bringing the law into conflict with the Constitution, the Voting Rights Act, and itself.

**C.  Because Allowing Amendment Would be Futile, the Court Should Dismiss These Claims with Prejudice.**

When dismissing a complaint, despite generally liberal pleading policies, leave to amend "is properly denied [ ] if amendment would be futile."  *Carrico v. City & Cty. of San Francisco*, 656 F.3d 1002, 1008 (9th Cir. 2011). When it comes to dismissal "for failure to state a claim upon which relief can be granted," if the "court determines that the 'allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency,' then the dismissal without leave to amend is proper." *Albrecht v. Lund*, 845 F.2d 193, 195 (9th Cir. 1988), *amended*, 856 F.2d 111 (9th Cir. 1988) (quoting *Schreiber Distrib. Co. v. Serv–Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986)). That is precisely the case here.

In this case, no set of facts would support the interpretation of the NVRA Plaintiffs proffer, which fails purely as a matter of law. As explained above, Plaintiffs' argument that documentary proof of citizenship must be provided to and reviewed by the Secretary not only cannot stand based on the specific statutory provisions they cite—they cannot stand based on *any* portion of the NVRA or any other provision of federal law, and are instead affirmatively rebutted by the statutory text,

---

[3] In ruling on a motion to dismiss, the Court may take judicial notice of "government records whose accuracy cannot reasonably be questioned." *Niagara Bottling, LLC v. Rite-Hite Co., LLC*, No. EDCV182032PSGSHKX, 2019 WL 1768875, at *3 (C.D. Cal. Feb. 11, 2019); *see also Mir v. Little Co. of Mary Hosp.*, 844 F.2d 646, 649 (9th Cir. 1988) ("it is proper for the district court to take judicial notice of matters of public record outside the pleadings and consider them for purposes of the motion to dismiss") (internal quotation marks & citation omitted).

1   the legislative history, and key principles of statutory construction.

2                                            **CONCLUSION**

3          Because neither the text of the NVRA nor any case law supports the position that the NVRA

4   requires a state to rely on more than an attestation of citizenship, any amendment would be futile.

5   The Court should dismiss these claims with prejudice.

6   Dated:  December 16, 2019

7                                                     Respectfully Submitted,

8   /s/ Sonja Diaz (as authorized on 12/16/19)    /s/ Stuart Naifeh

9   CHAD W. DUNN                                  STUART C. NAIFEH (SBN 233295)
    chad@brazilanddunn.com                        snaifeh@demos.org
    Director, UCLA Voting Rights Project          DEMOS

10  BRAZIL & DUNN LLP                             80 Broad Street, 4th Floor
    3303 Northland Drive, Suite 205               New York, NY 10004

11  Austin, TX 78731                              Telephone: 212.485.6055
    Telephone: 512.717.9822                       Facsimile: 212.633.2015

12  Facsimile: 512.515.9355

13                                                SARAH BRANNON* **
    SONJA DIAZ (SBN 298138)                       sbrannon@aclu.org

14  sonjadiaz@luskin.ucla.edu                     AMERICAN CIVIL LIBERTIES UNION
    Founding Director,                            FOUNDATION

15  Latino Policy & Politics Initiative           915 15th Street, NW
    UCLA Luskin School of Public Affairs          Washington, DC 20005

16  3250 Public Affairs Building                  Telephone: 202.675.2337
    Los Angeles, CA 90095-1656

17  Telephone: 310.794.9498                       DAVIN ROSBOROUGH*
                                                  drosborough@aclu.org

18  *Attorneys for Intervenor-Defendants*         AMERICAN CIVIL LIBERTIES UNION
    *Sophie Kosmacher, Anadela Navarrete*         FOUNDATION

19  *Gomez, and Kelly Lippman*                    125 Broad Street
                                                  New York, NY

20                                                Telephone: 212.549.2613

21

22

23

24

25

26

27

28

RAUL L. MACIAS (SBN 293208)
rmacias@acluca.org
VASUDHA TALLA (SBN 316219)
vtalla@aclunc.org
SHILPI AGARWAL (SBN 270749)
sagarwal@aclunc.org
ACLU FOUNDATION
   OF NORTHERN CALIFORNIA, INC.
39 Drumm Street
San Francisco, CA 94111
Telephone: 415.621.2493

CHIRAAG BAINS*
cbains@demos.org
ADAM LIOZ*
alioz@demos.org
DEMOS
740 6th Street NW, 2nd Floor
Washington, DC 20001
Telephone: 202.864.2746

*Attorneys for Intervenor-Defendants
League of Women Voters of California,
California Common Cause, Unidos US, and
Mi Familia Vota Education Fund*

*pro hac vice* motion forthcoming
** not admitted in DC; DC practice limited to federal court only

# Exhibit A



Mark P. Meuser
MMeuser@DhillonLaw.com

May 23, 2019

**Via U.S. Certified Mail**

Hon. Alex Padilla
California Secretary of State
1500 11th Street
Sacramento, CA 95814

**Re: Violations of the National Voter Registration Act, 52 U.S.C. §§ 20504, 20507**

Dear Secretary Padilla:

I write as legal counsel for Roxanne Beckford Hoge, Ali Mazarei, and Corrin Rankin in their individual capacities as registered California voters. My clients are writing to bring to your attention violations of the National Voter Registration Act (hereinafter "NVRA") sections 20504 and 20507.

The NVRA mandates that states ensure the eligibility of each potential voter prior to placing them on the voter rolls. The NVRA makes clear that eligibility includes citizenship. The NVRA also makes clear that the DMV is to share with your office information necessary to determine a voter's eligibility. California is violating the NVRA because the DMV is not sharing the information in its possession to assist you in determining eligibility. California is also violating the NVRA because your office is not verifying voter's citizenship prior to placing the voter on the voting rolls.

## I. NVRA VIOLATIONS

As you know, section 20507 establishes the State's duties in administering the voter rolls. NVRA section 20507 requires states to "(1) ensure that any eligible applicant is registered to vote" and "(2) to send notice to each applicant of the disposition of the application." This, of course, is not the same as the state's duties to "(4) conduct a general program that makes a reasonable effort to remove the names of ineligible voters from the official lists of eligible voters by reason of – the death of the registrant; or a change in the residence of the registrant…."

Section 20507 requires California to review each voter registration, and ensure that the person is eligible to vote. Eligibility includes citizenship. (*See e.g.* 52 U.S.C. § 20504(c)(2)(C)(i), 52 U.S.C § 20506(a)(6)(A)(i)(I), 52 U.S.C. § 20508(b)(2)(A)). If the individual is not eligible to

The Honorable Alex Padilla
May 28, 2019
Page 2 of 5

Mark P. Meuser
MMeuser@DhillonLaw.com

vote, then "the appropriate state election official" must notify the voter that he or she was not added to the voter registration rolls.

In reviewing the California National Voter Registration Act Manual (March 2019 version), it is clear that in determining voting eligibility, the factors your office is looking for include "the applicant's name, place of residence, mailing address if different than the place of residence, date of birth, country of birth, driver license (or state identification card) number or last four digits of social security number, and that the applicant is not in state or federal prison for a felony conviction. (Elec. Code § 2150(a).) The application must also certify as to the truthfulness and correctness of the contents and be signed under penalty of perjury. (Elec. Code § 2150(b).)" (CA NVRA Manual Chapter 4, Page 3).

One example listed in the California NVRA Manual for when an application is rejected is "if an applicant has not properly attested to U.S. citizenship and left the related check box on the application blank, the county elections offices must attempt to contact the applicant to seek this information." (CA NVRA Manual Chapter 4, Page 4).

NVRA section 20504 establishes the forms and procedures for simultaneous application for voter registration. This section requires "information necessary to … enable State election officials to assess the eligibility of the application…." (52 U.S.C. § 20504(c)(2)(B)(ii)). This is a different requirement than the inclusion of a "statement that – states each eligibility requirement (including citizenship)…" (52 U.S.C. § 20504(c)(2)(C)(i)), or the information required in the "attestation portion of the application" which includes the "voter eligibility requirements." (52 U.S.C. § 20504(c)(2)(D); 52 U.S.C. § 20507(a)(5)(A)).

In summary, the voter registration process, when being completed by the DMV, requires three things when it comes to eligibility. The voter registration application must include:

(1) The information necessary to help determine eligibility;
(2) A statement of what the eligibility requirements are; and
(3) An attestation by the voter that they have meet the eligibility requirements.

Since the NVRA requires the DMV to provide both the attestation and the information necessary to determine eligibility, it is clear that Congress did not intend for states like California to rely solely on the attestation when determining eligibility.

In California, when a resident applies for a driver license for the first time, he or she is required to provide an identity document and a social security card. (California Driver Handbook p. 1 – https://www.dmv.ca.gov/web/eng_pdf/dl600.pdf). The handbook states that examples "of acceptable identification documents include: Birth Certificate, U.S. Passport, U.S. Armed Forces ID Card, or foreign passport with valid I-94." (California Driver Handbook p. 4). All these documents contain citizenship information which is necessary to be passed to California election officials so that they may determine eligibility. Even drivers who are applying for an AB 60

The Honorable Alex Padilla
May 28, 2019
Page 3 of 5

Mark P. Meuser
MMeuser@DhillonLaw.com

driver license are still required to provide an identity document from their native country. The fact that an individual obtained an AB 60 driver license (which means that they "are unable to submit satisfactory proof of legal presence in the United States") would be evidence necessary for State election officials to determine that this individual is not eligible to vote.

California New Motor Voter Program (Cal. Elec. Code §2260 et.al) does not require the DMV to distribute to the Secretary of State's office citizenship information. The law only requires the DMV to produce to your office "[a] notation that the applicant has attested that he or she meets all voter eligibility requirements, including United States citizenship…." (Cal. Elec. Code § 2263(K)).

By only receiving the attestation, your office is not receiving all the information that the DMV is required to share with you under NVRA. Under NVRA, the motor voter application is supposed to contain both the attestation and the information necessary to determine eligibility.

As you are aware, from time to time, non-citizens end up on the voter rolls. Regardless of whether this is the fault of the non-citizen or an administrative error by the government, the NVRA establishes a safeguard whereby non-citizens would not be placed on the voter rolls, because the Chief Election Officer of each state—in California, you—verifies eligibility prior to placing the voter on the voter rolls.

When the Chief Election Officer fails to verify eligibility and places the ineligible voter on the voter roll, this creates a situation where the non-citizen is unwittingly placed in serious legal peril by the state. When these non-citizens receive balloting materials from the state, they often mistakenly believe that they are eligible to vote and they vote. Non-citizen voting is a violation of federal law that may lead to deportation. (*See e.g. Fitzpatrick v. Sessions*, 847 F.3d 913 (2017); *Kimani v. Holder*, 695 F.3d 666 (2012)).

Since a non-citizen who ends up voting in a Federal Election could be deported, it is critical that the Chief Election Office of each state fulfills his or her duties under the NVRA to make sure that non-citizens who are not eligible to vote, are never placed on the voter rolls.

## II. DEMAND

Based upon the aforementioned violations, we make the following demands:

(1) Start receiving from the DMV documentation regarding an individual's citizenship, so that you can fulfill your NVRA requirements to ensure eligibility prior to placing a registrant on the voter rolls;

(2) Begin to review all voter registrations and compare the voter registration with databases maintained by the state of California to ensure that all registrants are eligible to vote before you place them on the California voter rolls;

The Honorable Alex Padilla
May 28, 2019
Page 4 of 5

Mark P. Meuser
MMeuser@DhillonLaw.com

(3) Review all current California registered voters to determine eligibility and send notices to all non-citizens who happen to be on the voter rolls; and

(4) Update the California NVRA Manual to specifically lay out the responsibilities of the registrar of voters in verifying eligibility with state and county databases to determine eligibility.

### III. POTENTIAL LITIGATION

In enacting the NVRA, Congress authorized a private right of action to enforce the provisions of NVRA. Accordingly, we may bring a lawsuit against you under the NVRA if you fail to correct these violations within 90 days of your receipt of this letter. You are receiving this letter because you are the designated Chief Election Officer of California under the NVRA.

Congress also authorized awards of attorney's fees, including litigation expenses and costs, to the prevailing party. Consequently, if we initiate a lawsuit under the NVRA and the court finds you in violation, you will be responsible for attorney's fees, costs, and litigation expenses.

### IV. REQUEST FOR DOCUMENTS:

Pursuant to 52 U.S.C. § 20507(i)(1), we request that you produce all of the following documents:

(1) Copies of the most recent California voter registration database, including fields indicating name, home address, mailing address, date of birth, place of birth, most recent voter activity, and active or inactive status;

(2) Copies of all emails or other communications sent or received by the California Secretary of State Election Division relating to processing of voter registration forms to determine voter eligibility over the last two years;

(3) Copies of all emails or other communications sent or received by the California Secretary of State Election Division and the California Department of Motor vehicles in which the subject of voter's eligibility is mentioned over the last two years;

(4) California's policies and procedures, formal and informal, related to eligibility of a California resident to vote;

(5) California's policies and procedures, formal and informal, related to the processing of voter registration forms to determine if a registrant is eligible to vote prior to adding them on the voter rolls;

(6) A list of all databases that you use to help determine if a voter registration applicant is eligible to vote;

The Honorable Alex Padilla
May 28, 2019
Page 5 of 5

Mark P. Meuser
MMeuser@DhillonLaw.com

(7)   A list of names, addresses, and date of birth of all voter registration applicants over the last two years who were notified that they were not put on the voter rolls because they did not attest that they were a citizen of the United States;

(8)   A list of names, addresses, and date of birth of all voter registration applicants over the last two years who upon being notified that they failed to attest that they were a citizen of the United States corrected this defect and are now registered to vote;

(9)   A list of names, addresses, and date of birth of all voter registration applicants over the last two years who were notified that they were not put on the voter rolls because it was determined that they were not eligible to vote even though they had attested that they were eligible to vote; and

(10)  All documents and records of communications received from registered voters, legal counsel, claimed relatives, or other agents in the last two years requesting a removal or cancelation from the voter roll for any reason related to non-U.S. citizenship/ineligibility. Please include any official records indicating maintenance actions undertaken thereafter.

## V. CONCLUSION

Please be advised that this letter serves as written notice, pursuant to 52 U.S.C. § 20510(b)(2), that if the continuing violation of the NVRA is not corrected immediately, my clients have authorized this firm to take legal action to enforce the NVRA. In the event that litigation becomes necessary, additional claims under the United States Constitution will likely be brought.

Please contact me as soon as possible to discuss a possible resolution of this matter.

Sincerely,

Mark P. Meuser

# Exhibit B



**Mark P. Meuser**
MMeuser@DhillonLaw.com

May 31, 2019

**Via U.S. Certified Mail**
Ms. Kathleen Webb
Office of the Director
Department of Motor Vehicles
2415 1ˢᵗ Ave. Mail Station F101
Sacramento, CA 95818-2606

**Re: Violations of the National Voter Registration Act, 52 U.S.C. §§ 20504, 20507**

Dear Acting Director Webb:

I write as legal counsel for Roxanne Beckford Hoge, Ali Mazarei, and Corrin Rankin in their individual capacities as registered California voters. My clients are writing to bring to your attention violations of the National Voter Registration Act (hereinafter, "NVRA") sections 20504 and 20507.

The NVRA mandates that states ensure the eligibility of each potential voter prior to placing them on the voter rolls. The NVRA makes clear that eligibility includes citizenship. The NVRA also makes clear that the California DMV is required to share with the chief election officer information necessary to determine a voter's eligibility. California is violating the NVRA, because the California DMV is not sharing the information in its possession to assist the chief election officer in determining eligibility.

## I. NVRA VIOLATIONS

Section 20507 establishes the State's duties in administering the voter rolls. NVRA section 20507 requires states to "(1) ensure that any eligible applicant is registered to vote" and "(2) to send notice to each applicant of the disposition of the application." This, of course, is not the same as the state's duties to "(4) conduct a general program that makes a reasonable effort to remove the names of ineligible voters from the official lists of eligible voters by reason of – the death of the registrant; or a change in the residence of the registrant…."

Section 20507 requires California to review each voter registration, and ensure that the person is eligible to vote. Eligibility includes citizenship. (*See e.g.* 52 U.S.C. § 20504(c)(2)(C)(i), 52 U.S.C § 20506(a)(6)(A)(i)(I), 52 U.S.C. § 20508(b)(2)(A)). If the individual is not eligible to vote, then "the appropriate state election official" must notify the voter that he or she was not added to the voter registration rolls.

Mark P. Meuser
MMeuser@DhillonLaw.com

NVRA section 20504 establishes the forms and procedures for simultaneous application for voter registration. This section requires "information necessary to … enable State election officials to assess the eligibility of the application…." (52 U.S.C. § 20504(c)(2)(B)(ii)). This is a different requirement than the inclusion of a "statement that – states each eligibility requirement (including citizenship)" (52 U.S.C. § 20504(c)(2)(C)(i)), or the information required in the "attestation portion of the application" which includes the "voter eligibility requirements." (52 U.S.C. § 20504(c)(2)(D); 52 U.S.C. § 20507(a)(5)(A)).

In summary, the voter registration process, when being completed by the DMV, requires three things when it comes to eligibility. The voter registration application must include:

(1) The information necessary to help determine eligibility;
(2) A statement of what the eligibility requirements are; and
(3) An attestation by the voter that he or she has meet the eligibility requirements.

Since the NVRA requires the DMV to provide both the attestation and the information necessary to determine eligibility, it is clear that Congress did not intend for states like California to rely solely on the attestation when determining eligibility.

In California, when a resident applies for a driver license for the first time, he or she is required to provide an identity document and a social security card. (California Driver Handbook p. 1 – https://www.dmv.ca.gov/web/eng_pdf/dl600.pdf). The handbook states that examples "of acceptable identification documents include: Birth Certificate, U.S. Passport, U.S. Armed Forces ID Card, or foreign passport with valid I-94." (California Driver Handbook p. 4). All these documents contain citizenship information which is necessary to be passed to California election officials so that they may determine eligibility. Even drivers applying for an AB 60 driver license are still required to provide an identity document from their native country. The fact that an individual obtained an AB 60 driver license (which means that they "are unable to submit satisfactory proof of legal presence in the United States") would be evidence necessary for State election officials to determine that this individual is not eligible to vote.

California New Motor Voter Program (Cal. Elec. Code §2260 et.al) does not require the DMV to distribute to the Secretary of State's office citizenship information. The law only requires the DMV to produce "[a] notation that the applicant has attested that he or she meets all voter eligibility requirements, including United States citizenship…." (Cal. Elec. Code § 2263(K)).

It is our understanding that the California DMV is not sending to the California Secretary of State, information necessary for the Secretary of State to determine eligibility. Under NVRA, the motor voter application is supposed to contain *both* the attestation *and* the information necessary to determine eligibility.

## II. DEMAND

Based upon the aforementioned violations of the NVRA, we make the following demands:

(1) To the extent that it is not doing so already, California DMV must begin recording in its databases the citizenship information that it receives from all applicants for a California driver license; and

(2) California DMV must begin transmitting to the California Secretary of State, any citizenship information from all applications for a California driver license.

## III. POTENTIAL LITIGATION

In enacting the NVRA, Congress authorized a private right of action to enforce the provisions of NVRA. Accordingly, we may bring a lawsuit against you under the NVRA if you fail to correct these violations within 90 days of your receipt of this letter. You are receiving this letter because the California DMV is a designated agency for the registration of voters in the state of California under the NVRA.

Congress also authorized awards of attorney's fees, including litigation expenses and costs, to the prevailing party. Consequently, if we initiate a lawsuit under the NVRA and the court finds you in violation, you will be responsible for attorney's fees, costs, and litigation expenses.

## IV. REQUEST FOR DOCUMENTS:

Pursuant to 52 U.S.C. § 20507(i)(1), we request that you produce to us all of the following documents:

(1) Copies of all emails or other communications sent to or received by the California Secretary of State relating to processing of voter registration forms over the last two years;

(2) Copies of all emails or other communications sent or received by the California Secretary of State in which the subject of voter's citizenship is mentioned over the last two years;

(3) California's policies and procedures, formal and informal, related to data distributed to the Secretary of State as a part of the voter registration process.

## V. CONCLUSION

Please be advised that this letter serves as written notice, pursuant to 52 U.S.C. § 20510(b)(2), that if the continuing violation of the NVRA is not corrected immediately, my clients have authorized this firm to take legal action to enforce the NVRA in court . In the event

Ms. Kathleen Webb
May 31, 2019
Page 2 of 4

Mark P. Meuser
MMeuser@DhillonLaw.com

that litigation becomes necessary, additional claims under the United States Constitution will likely be brought.

Please contact me as soon as possible to discuss a possible resolution of this matter.

Sincerely,

Mark P. Meuser

Enclosure: May 23, 2019 Letter sent to California Secretary of State Alex Padilla

Cc:     Hon. Alex Padilla
        California Secretary of State
        1500 11th Street
        Sacramento, CA 95814